**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| PROWESS, INC., | * |
|  | * |
| Plaintiff, | * |
|  | * Civil Case No. WDQ-11-1357 |
| v. | * |
|  | * |
| RAYSEARCH LABORATORIES AB, *et al.*, | * |
|  | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Prowess, Inc. ("Prowess") filed suit against Defendants Raysearch Laboratories AB ("Raysearch"), Nucletron Corporation, and Philips Nuclear Medicine, Inc., f/k/a Philips Medical Systems (Cleveland), Inc. (collectively "Defendants").[1] The Complaint alleges that Defendants infringed on U.S. Patent 7,162,008 ("the '008 patent") and U.S. Patent 7,333,591 ("the '591 Patent") (together, "the Asserted Patents"). ECF No. 62. This Memorandum Opinion addresses Raysearch's Motion to Compel documents from third-party University of Maryland Baltimore ("UMB"), ECF No. 122, the opposition, ECF No. 140, and the reply thereto. ECF No. 155. A hearing is unnecessary in this case. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, Raysearch's Motion to Compel is GRANTED.

**I.   Background**

Prowess alleges that Defendants infringed on the Asserted Patents, which were invented by Dr. Matthew A. Earl, Dr. David M. Shepard, and Dr. Xinsheng (Cedric) Yu. All three named

---

[1] This case has been referred to me by Judge Quarles to resolve discovery disputes and related scheduling matters. ECF No. 85.

inventors worked for UMB when the '008 patent application was filed. Prowess is the licensee to the Asserted Patents, and UMB is the assignee. UMB and the inventors are not parties to this lawsuit.

Raysearch served a Subpoena for Documents on UMB on August 27, 2012, with September 26, 2012 designated as the date for production. *See* Def. Mem., Ex. A. Shortly thereafter, the parties conferred regarding the requests, and UMB received an extension of time to produce documents. Def. Mem., Ex. B-1. On October 3, 2012, UMB produced some of the requested documents, along with a privilege log. Def. Mem., Ex. C. On October 10, 2012, after reviewing the privilege log and a supplemental attorney list, Raysearch sent a letter to UMB indicating that UMB's assertions of the attorney-client privilege and work product privilege were unsupported. Def. Mem., Ex. F. On October 12, 2012, UMB responded to Raysearch's letter, noting that it would not produce any of the documents in its privilege log. Def. Mem., Ex. H. The parties exchanged correspondence and held a teleconference on November 7, 2012 in an effort to resolve the dispute, but no agreement was reached. Def. Mot. 1. Raysearch informed UMB that it would file the instant motion, and then filed the motion with the Court on November 16, 2012. ECF No. 122.

## II.   Analysis

Raysearch seeks to compel production of documents identified in UMB's privilege log. "Federal Rule of Civil Procedure 45 establishes the rules for subpoenas served upon individuals and entities that are not parties to the underlying lawsuit." *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002) (citing Fed. R. Civ. P. 34(c)). Consistent with Rule 26, Rule 45 subpoenas may be used to discover "any nonprivileged matter that is relevant to any party's claim or defense." *Boykin Anchor Co. Inc., v. Wong*, No. 5:10-CV-591-FL, 2012 WL

27328, at *2 (E.D.N.C. Jan. 4, 2012).  A non-party may object to a subpoena by: "fil[ing] a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A), seek[ing] a protective order pursuant to Fed. R. Civ. P. 26(c), or . . . [by] object[ing] to the production of documents by opposing a motion to compel under Fed. R. Civ. P. 45(c)(2)." *Star Scientific, Inc.*, 205 F. Supp. 2d at 484.  UMB opposes Raysearch's motion to compel, arguing that the documents sought are protected from disclosure because they are attorney-client privileged and work product privileged.

### a.  The Attorney-Client Privilege

UMB first argues that the documents sought by Raysearch are attorney-client privileged. Opp'n 2-5.  The proponent of the attorney-client privilege bears the burden of proving each element of the privilege.  *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998); *In re Grand Jury Proceedings*, 33 F.3d 342, 352-53 (4th Cir. 1994).  The elements of the privilege are:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact to which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins*, 148 F.3d at 383 (citations omitted).

Raysearch contends that it is entitled to many of the documents identified as attorney-client privileged in UMB's privilege log.[2]  UMB seemingly argues that the documents sought are privileged because either they were written by, or created under the direction of, UMB counsel,

---

[2] Raysearch seeks all privilege log entries that lack highlighting and have green highlighting. Def. Mem. 4 n.1; Def. Mem., Ex. C.

or because they were created by or for a UMB patent agent named Elizabeth Hart-Wells.[3]  Opp'n 4-5.  Both grounds are insufficient to establish that the documents Raysearch seeks are attorney-client privileged.

UMB posits that the "UMB Office of University Counsel provides legal services and consultation as general counsel to the University's professional schools . . . and to all of its offices and departments including the Office of Tech Transfer [("OTT")] and the Office of Research and Development [("ORD")]."  Opp'n 2-3.  UMB seems to argue that because its Office of University Counsel provides legal services, and because a former UMB patent attorney worked in ORD, any documents sent by or to its OTT or ORD are privileged.  This argument is flawed for several reasons.

First, even if UMB's Office of University Counsel provides legal services to its OTT and ORD, this does not explain how the Office of University Counsel was involved in the specific communications here that were sent by or to OTT and ORD.  *See, e.g.*, Def. Mem., Ex. C 1:1; 2:2-5.  Based on the information before this Court, the documents Raysearch seeks were not sent to, authored by, or authored at the behest of, UMB's Office of University Counsel.  Rather, these documents were either authored by an inventor and sent to OTT or ORD,[4] *e.g.* Ex. C. 1:1; 2:4, or

---

[3] UMB also argues that the challenged documents were made with "an eye to litigation."  Opp'n 5.  This argument does nothing to establish the existence of the attorney-client privilege, as it does not prove that any items on UMB's privilege log were created for, or sent to, an attorney for the purpose of obtaining legal advice.  This argument is relevant to UMB's work-product privilege argument, and will be addressed in that section below.

[4] One of these communications also lists H. Dickler, R. Digate, R. Franklin, W. Highsmith, L. Malkas, B. O'Malley, G. Rosen, J. Sauk, J. Warren, and S. Wasserman.  UMB has neither identified any of these individuals as attorneys on its attorney list, nor explained their involvement in the patent application process.

4

authored by OTT. *E.g.* Ex. C. 2:3; 2:5-6. There is no indication that the Office of University Counsel was involved in these communications in any way.

In addition, UMB has not provided any information establishing that the documents involving other ORD and OTT employees were created at the behest of David Marks, a patent attorney for UMB, for the purpose of providing legal services. UMB's opposition, along with Mr. Marks's deposition testimony, indicate that ORD and OTT did not solely engage in providing legal advice. *See* Reply, Ex. 1, 16:9-20:2. UMB notes that the OTT and ORD employees "often wore multiple hats," but does not explain whether these employees created the documents at issue under the supervision of Mr. Marks for the purpose of providing legal advice. Opp'n 3. Based on the information before it, this Court cannot assume, when it is UMB's burden to prove privilege, that the challenged documents somehow involve legal services provided by either UMB's Office of University Counsel or by Mr. Marks.

UMB also argues that many documents identified on its privilege log are privileged because they were created by, or at the behest of, a UMB patent agent named Elizabeth Hart-Wells. Courts are split on the question of whether a client's communications with patent agents receive the same protection as a client's communications with attorneys. *See Buyer's Direct, Inc. v. Belk, Inc.*, SACV 12-00370-DOC (MLGx), 2012 WL 1416639, at *2-3 (C.D. Cal. Apr. 24, 2012) (explaining the split in authority). While the Fourth Circuit has not directly addressed the issue, district courts in this circuit have held that there is no patent agent privilege. *See Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 40 (D. Md. 1974) (holding that communications between the client's outside counsel and foreign patent agents are not privileged); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 143 F.R.D. 611, 616-17 (E.D.N.C. 1992) (stating that "[t]he established rule in this circuit . . . is that no communications from patent agents, whether

American or foreign, are subject to an attorney-client privilege in the United States."); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1169 (D.S.C. 1974) (same). Of course, communications between a patent agent and a client may be privileged where the patent agent is acting as an agent of an attorney, or where "the patent proceeding is before the United States Patent Office and the patent agent is registered with that office." *Glaxo, Inc. v. Novopharm Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993).

Pursuant to the authority cited above, this Court rejects UMB's argument that communications involving Ms. Hart-Wells are privileged due to a patent agent privilege. Moreover, UMB has not argued that Ms. Hart-Wells was acting as an agent for an attorney. The only hints regarding the extent of Ms. Hart-Wells's services come in UMB's letter to Raysearch, dated October 12, 2012. Def. Mem., Ex. G. There, UMB noted that "it is clear that the patent agents'[5] role was in pursuit of patent applications and is confidential work product." *Id.* This letter also suggests that Ms. Hart-Wells had subordinates working for her "to ascertain inventorship[,]" that she was involved in many discussions with the inventors, and that she was somehow involved in prosecuting the patent. *See id.* These descriptions do not establish that Ms. Hart-Wells was working as an agent for an attorney. UMB also never suggests that Ms. Hart-Wells was working in a patent proceeding before the United States Patent Office. Accordingly, this Court cannot find that UMB has met its burden of proving that the documents sent by, to, or at the behest of Ms. Hart-Wells are attorney-client privileged.

UMB also asserts the attorney-client privilege for documents whose author is "Unknown – Presumably David Marks." *See* Ex. C, 2:7-10. Raysearch does not seek documents authored or reviewed by Mr. Marks. However, Raysearch argues that it is entitled to the documents with

---

[5] It is not clear whether this mention of "patent agents" even refers to Ms. Hart-Wells.

an "unknown" author. Def. Mem. 12. Most of these documents appear to be draft patent applications or documents related thereto.[6] Ex. G. Draft patent applications and documents relating to "exclusively technical data for inclusion in patent filings are not protected" under the attorney-client privilege. *Glaxo*, 148 F.R.D. at 540. Moreover, the proponent of the attorney-client privilege in a privilege log must provide "the name of the person making/receiving the communication." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008). UMB has not identified an author for these entries. UMB has also failed to explain its assertion of privilege for these documents, either in its opposition or in its October 12, 2012 letter to Raysearch. Again, because it is UMB's burden to prove that these documents are privileged, this Court cannot find that documents are privileged based solely on UMB's representation that documents were *presumably* authored by Mr. Marks.

Lastly, UMB notes that it has entered into a common interest agreement with Prowess. Opp'n 2. The "common interest" privilege is an extension of the attorney-client privilege which allows persons with a common interest in litigation to communicate with their attorneys and with each other without waiving the attorney-client privilege. *In re Grand Jury Subpoenas 89-3 & 89-4*, 902 F.2d 244, 249 (4th Cir. 2005). The proponent of the common interest privilege "must establish that *when* communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005) (emphasis in original). Here, UMB merely mentions a "Common Interest and Assistance Agreement" with Prowess in the "Background" section of its opposition, and does not expand on

---

[6] The documents are titled "Draft Provisional App," "Draft Figures," "Draft Terms," "Provisional Application as Filed," Draft Non-provisional App 1," "Draft Non-provisional App 2," and "Draft Non-provisional App 3." Ex. G. One of the entries, that may or may not relate to draft patent applications, is titled "Draft Amendment in response to Office Action." *Id.* at 12:3.

this agreement in any way in its argument section.[7]  UMB failed to explain which communications in its privilege log are covered by the common interest privilege, or how such communications were shared as part of an ongoing common legal enterprise.  Therefore, even if UMB attempted to assert a common interest privilege in its opposition, it has failed to meet its burden to establish that such a privilege applies.

### b. Work Product Protection

The work product doctrine "confers a qualified privilege on documents prepared by an attorney in anticipation of litigation."  *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 231-32 (4th Cir. 2011).  "Materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes do not constitute 'documents prepared in anticipation of litigation' protected by work product privilege."  *Id.* at 232.  Rather, the entity asserting the work product privilege must prove that the documents at issue were "prepared *because* of the prospect of litigation."  *Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992).  Much like the attorney-client privilege, the proponent of the work product privilege bears the burden of "demonstrating the applicability of the privilege to specific documents."  *Solis*, 644 F.3d at 233.  UMB has failed to meet this burden.

UMB argues that the testimony of Mr. Marks proves that it properly asserted the work product privilege.  Specifically, Mr. Marks stated that he "always prepared patent applications with the mindset that there would be a potential for litigation," and that he "typically work[s] in the sense that patent applications are made[,] written to be – to receive a patent and then be litigated."  Opp'n 3.  This testimony does not suggest that UMB anticipated any specific

---

[7] UMB has also failed to provide this document for the Court.

litigation when preparing the Asserted Patents, or that the documents at issue were prepared "because of" the prospect of litigation. Rather, UMB argues that these documents are protected because Mr. Marks, its patent attorney, always believes that litigation is possible. "It is not enough, however, that the mere *possibility* of litigation exists." *Burlington Indus.*, 65 F.R.D. at 43 (emphasis in original).

Mr. Marks's testimony further undermines UMB's work product assertion. When asked if he was aware of any specific potential litigation regarding the Asserted Patents, Mr. Marks responded by stating, "[m]y question back to you is how could I be aware of litigation about a patent application that wasn't even filed yet?" Def. Reply, Ex. 1, 89:14-22. When pressed further, Mr. Marks testified that this particular patent was not prepared in anticipation of potential litigation. *Id.* at 90:9-17. Accordingly, UMB has not established that the work product privilege applies to any documents listed in its privilege log.

Because UMB has not established that the attorney-client privilege or work product privilege applies to any of the documents sought by Raysearch in its Motion to Compel,[8] those documents must be produced.[9]

---

[8] The documents sought only include the privilege log entries that are not highlighted, and those that are highlighted in green in Raysearch's Exhibit C.

[9] Raysearch also seeks fees and costs. "The only authority for the imposition of sanctions against a nonparty for failure to comply with a subpoena is Rule 45(e)." *In re NCAA Student-Athlete Name & License Litig. for the N. Dist. Cal.*, No. 1:11MC63, 2012 WL 2281253, at *7 (M.D.N.C. June 18, 2012). Rule 45(e) allows the Court to hold persons in contempt who "fail[] without adequate excuse to obey the subpoena." *Id.* "[T]he prevailing view is that a timely objection to a subpoena *duces tecum* is itself an 'adequate excuse.'" *In re Rule 45 Subpoena Issued to Robert K. Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at *3 (E.D.N.C. Nov. 26, 2007). Some courts have held that a nonparty must violate a court order before sanctions can be imposed. *Id.* Although UMB did not submit its objection within the required fourteen days, Raysearch gave UMB an extension, excusing UMB's tardiness. Also, UMB did not violate a Court order, and UMB asserted its objections in good faith. Under these circumstances, Raysearch is not entitled to fees and costs.

A separate order is entered herewith.


Dated: January 18, 2013                                     /s/
                                                   Stephanie A. Gallagher
                                                   United States Magistrate Judge