**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| PROWESS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No. WDQ-11-1357 |
| v. | * | |
| | * | |
| RAYSEARCH LABORATORIES AB, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Prowess, Inc. ("Prowess") filed suit against Defendants Raysearch Laboratories AB ("Raysearch"), Nucletron Corporation, and Philips Nuclear Medicine, Inc., f/k/a Philips Medical Systems (Cleveland), Inc. (collectively "Defendants").[1] The Second Amended Complaint alleges that Defendants infringed on U.S. Patent 7,162,008 ("the '008 patent") and U.S. Patent 7,333,591 ("the '591 Patent") (together, "the Asserted Patents"). ECF No. 62. Raysearch has filed four Motions to Compel, seeking to compel the deposition testimony of third party inventors Dr. Xinsheng (Cedric) Yu and Dr. David M. Shepard, ECF Nos. 123, 138, Prowess's Director of Engineering, Dr. Wilson Fong, ECF No. 129, and Prowess's CEO, John Nguyen. ECF No. 131.[2] This Memorandum Opinion addresses these motions, the consolidated

---

[1] This case has been referred to me by Judge Quarles to resolve discovery disputes and related scheduling matters. ECF No. 85.

[2] Prowess has filed a Motion for *In Camera* Review for a document apparently relating to Raysearch's motions to compel. ECF No. 152. A party must make a "showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim of privilege/protection." *Victor Stanley v. Creative Pipe, Inc.*, 250 F.R.D. 251, 266 (D. Md. 2008). Prowess has entirely failed to explain

opposition, ECF No. 140, and the consolidated reply thereto. ECF No. 155. A hearing is unnecessary in this case. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, Raysearch's Motions to Compel are GRANTED.

**I. Background**

Prowess alleges that Defendants infringed on the Asserted Patents, which were invented by Dr. Matthew A. Earl, Dr. Shepard, and Dr. Yu ("the inventors"). All three named inventors worked for the University of Maryland-Baltimore ("UMB") when the '008 patent application was filed. Prowess is the licensee to the Asserted Patents, and UMB is the assignee. Although UMB and the inventors are not parties to this lawsuit,[3] Dr. Yu was deposed on October 22, 2012, and Dr. Shepard was deposed on November 28, 2012. Opp'n 6-10. In addition, Prowess's CEO, Mr. Nguyen, was deposed on November 6, 2012, and Prowess's Director of Engineering, Dr. Fong, was deposed on November 8, 2012. *Id.*

During each deposition, counsel for Prowess instructed the witnesses not to answer certain questions, asserting attorney-client privilege, work product protection, and common interest privilege. Raysearch disputed Prowess's assertions. The parties attempted to resolve this dispute in person on October 22, 2012, and by telephone on November 27, 2012. Mot. to Compel Yu 3. The parties failed to reach an agreement, and Prowess continued to instruct each of the witnesses not to answer certain questions. Raysearch subsequently filed the instant motions to compel with this Court. ECF Nos. 123, 129, 131, 138.

---

the document it seeks to submit for *in camera* review. Prowess merely stated that review of this document "would aid the Court in determining whether the documents that Defendants seek to compel are privileged." ECF No. 152, at 1. Prowess does not explain the general content of this document, why it is privileged, and why it will reveal evidence relevant to its assertions of privilege. As such, Prowess's Motion for *In Camera* Review is DENIED.

[3] Although Dr. Yu is also listed on Prowess's Organizational Chart as its "Chief Technology Adviser," he is a third party in this lawsuit. As Prowess itself notes in its opposition, Dr. Yu is "an employee of the University of Maryland." Opp'n 16.

**II.     Analysis**

Raysearch seeks to compel testimony from UMB inventors Dr. Yu and Dr. Shepard, and Prowess employees Mr. Nguyen and Dr. Fong. Raysearch seeks to discover three types of information from these individuals: (1) the content of oral communications between Prowess employees and the inventors, and among the inventors, (2) Prowess's and the UMB inventors' investigations of, and opinions relating to, whether the Asserted Patents were valid and infringed upon, and (3) documents identified on Dr. Shepard's privilege log. Each type of information sought by Raysearch will be addressed separately below.

> **a. Raysearch's Motions to Compel the Content of the Discussions Between the Inventors and Prowess, and Among the Inventors.**

Raysearch seeks discovery relating to: (1) Dr. Yu's conversations with Mr. Nguyen, (2) Dr. Yu's communications with the other inventors, (3) Dr. Fong's communications with the inventors, (4) Mr. Nguyen's communications with UMB, and (5) Dr. Shepard's conversations with Dr. Earl. Each of these topics can be classified as either communications between Prowess and UMB, or communications among the inventors. The communications will be analyzed under each privilege doctrine below.

> *1. Attorney-Client Privilege*

Prowess first argues that the oral communications are protected by the attorney-client privilege.[4] The proponent of the attorney-client privilege bears the burden of proving each

---

[4] Although Prowess's opposition includes the legal standards for the attorney-client privilege and work product protection, Prowess consistently refers to the communications at issue as "privileged," without clarifying which doctrine it intends to invoke. *See* Opp'n 25-29. The attorney-client privilege and work product doctrine include different elements, and serve entirely different purposes. *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 921, 922-30 (N.D. Cal. 1976). The Court cannot find that Prowess has met its burden in establishing that the disputed information is protected by either the attorney-client privilege or work product doctrine without

element of the privilege. *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998); *In re Grand Jury Proceedings*, 33 F.3d 342, 352-53 (4th Cir. 1994). The party asserting the privilege must prove that there was (1) a communication, (2) between privileged persons, (3) in confidence, (4) for the purpose of seeking, obtaining, or providing legal assistance to the client. *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447, at *4 (D. Md. Dec. 9, 2010). In general, "the privilege does not extend to communications between either the client or its attorney and a third party." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1070 (N.D. Cal. 2002).

Although these communications did not occur between the client, Prowess, and its attorneys, Prowess asserts that these conversations are attorney-client privileged because they occurred at the behest of Prowess's attorneys for the purpose of assisting in this litigation. Opp'n 16-17, 20. In advancing this theory, Prowess argues that "communications to non-attorneys can still be privileged if their dominant purpose is to facilitate the rendition of legal services to the client, and the substance of the communication is transmitted to the lawyer shortly thereafter." Opp'n 12 (emphasis removed) (citing *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 35-38 (D. Md. 1974). While Prowess is correct that communications to non-attorneys may be privileged if their purpose is to facilitate the rendition of legal services, a review of *Burlington* indicates that this extension of the privilege only applies to intracorporate communications. *See id.* at 38; *Eutectic Corp. v. Metco, Inc.*, 61 F.R.D. 35 (E.D.N.Y. 1973). Because Prowess has asserted that the inventors are third parties, Prowess's conversations with the inventors, and conversations among the inventors, cannot be considered "intracorporate." Also, even if the communications were intracorporate, Prowess has failed to provide any evidence that such

---

knowing precisely which protection is being asserted, and without knowing which arguments apply to each doctrine.

conversations were ever transmitted to Prowess's counsel. *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 409-10 (D. Md. 2005) (holding that the party asserting the attorney-client privilege must prove that the privilege applies "by way of evidence, not just argument.").

An analogous situation was presented in *Black & Decker Corp. v. United States*, 219 F.R.D. 87 (D. Md. 2003). The *Black & Decker* court explained that the "attorney-client privilege may protect exchanges between the client and an accountant when the accountant enables communication with the attorney by 'translating' complex accounting concepts." *Id.* at 90. Because the purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys," *Fisher v. United States*, 425 U.S. 391, 403 (1976), courts have "narrowly interpreted" this extension of the privilege. *Black & Decker Corp.*, 219 U.S. at 90 (citing *United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999)). Thus, a communication "between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *Ackert*, 169 F.3d at 139. Rather, the extension of the privilege only applies if the third party "is needed to facilitate communication between the client and the attorney." *Black & Decker Corp.*, 219 F.R.D. at 90.

Here, Prowess has failed to establish that its conversations with the inventors, or conversations among the inventors, were "needed to facilitate communications" between Prowess and its attorneys. For example, Prowess asserts that it sought Dr. Yu's technical opinions regarding infringement and validity of the Asserted Patents, and that his communications "contain mental impressions and legal analyses prepared expressly for this litigation." Opp'n 16-17. However, it appears as though Prowess was capable of performing

this analysis internally, because Prowess's CEO, Mr. Nguyen, also asked, "Dr. Fong, a trained medical physicist employed at Prowess, to determine whether the Defendants' products infringe the Asserted Patents." Opp'n 6. Although Prowess may have *wanted* to discuss infringement and validity with the inventors, and although information provided by the inventors may be important to its case, Prowess certainly has not provided sufficient information for this Court to determine that it *needed* the inventors to facilitate communication with its attorneys. Prowess has also failed to provide evidentiary support, in the form of affidavits or deposition excerpts, proving that the inventors' conversations were requested by attorneys.

Moreover, Prowess has failed to establish the existence of several elements of the attorney-client privilege. For example, Prowess argues that the conversations between Dr. Shepard and Dr. Earl are privileged because, "Dr. Shepard testified that his conversations with Dr. Earl took place with the involvement of counsel for Prowess." Opp'n 26. Despite counsel's assertion, Dr. Shepard never said that counsel for Prowess participated in his conversations with Dr. Earl. *See* Opp'n, Ex. 11, Shepard Dep. 76:22-77:2. Rather, Dr. Shepard merely stated that "I think that was a privileged conversation. Right?" *Id.*

In addition, Prowess has not demonstrated that any of the disputed communications were made between a client and an attorney. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (noting that the party asserting the privilege must demonstrate that the communications were between a client and an attorney). Prowess has further failed to prove that the content of the disputed communications is privileged. For example, during Dr. Yu's deposition, counsel for Prowess stated, "I'm not sure what – how many conversations [Dr. Yu has] had or what conversations he's had but to the extent you are asking about all of them, I'm confident that *at least some of them* are privileged." Opp'n, Ex. 10, Yu Dep. 61:13-17 (emphasis added); *see id.*

at 81:10-13 (where counsel for Prowess asserted the privilege for Dr. Yu's conversations with Dr. Shepard, stating that Dr. Yu "can't recall if the conversation took place either before or after [the lawsuit was filed]. Because he can't recall when it took place, *it could be privileged or not*.") (emphasis added). Even if some of the conversations were privileged, it would not justify a blanket assertion of privilege over all conversations. Lastly, despite Prowess's argument to the contrary, the attorney-client privilege does not extend to include "every conversation a client has with a third party where the client contends that his attorney directed him to engage in that conversation." *See In re Grand Jury Subpoena Dated July 6, 2005*, 256 Fed. Appx. 379, 383 (2d Cir. 2007). Therefore, Prowess has not fulfilled its burden to substantiate its assertion of the attorney-client privilege for communications between Prowess and the inventors, and among the inventors.

2. *Work Product Protection*

Prowess also argues that the disputed communications are protected by the work product doctrine. The work product doctrine "confers a qualified privilege on documents prepared by an attorney in anticipation of litigation." *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 231-32 (4th Cir. 2011). Documents prepared for an attorney by its agent may also be protected. *See* Fed. R. Civ. P. 26(b)(3)(A). The entity asserting the work product protection must prove that the documents at issue were "prepared *because* of the prospect of litigation." *Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis in original). Much like the attorney-client privilege, the proponent of the work product doctrine bears the burden of "demonstrating the applicability of the privilege to specific documents." *Solis*, 644 F.3d at 233. Prowess has failed to meet this burden.

Prowess appears to be taking the position that all conversations between Prowess and the inventors, and among the inventors, may have been at the request of a lawyer for the purpose of assisting in this litigation, and that they are therefore protected. Opp'n 16, 20, 22-23. As noted above, Prowess has failed to prove that any of the disputed conversations occurred at the direction of its attorneys, that the content of the communications is protected work product, or that these communications were relayed to attorneys. *See* Opp'n, Ex. 10, Yu Dep. 61:13-17; 81:10-13. Throughout its opposition, Prowess asserts vague and general arguments as to why the conversations are "privileged," but has provided this Court with no actual evidence to support its assertions. Prowess's arguments must fail. *See Neuberger Berman*, 230 F.R.D. at 409-10.

### 3. The Common Interest Privilege

Prowess next argues that it has a "common interest agreement" with UMB, and because the inventors are or were employed at UMB, all discussions taking place after counsel was engaged are privileged. Opp'n 17. The "common interest" privilege is an extension of the attorney-client privilege, which allows persons with a common interest in litigation to communicate with their attorneys and with each other without waiving the attorney-client privilege. *In re Grand Jury Subpoenas 89-3 & 89-4*, 902 F.2d 244, 249 (4th Cir. 2005). The proponent of the common interest privilege "must establish that *when* communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Neuberger Berman*, 230 F.R.D. at 416 (emphasis in original). Moreover, the party asserting the common interest privilege "is obligated to explicitly define the nature and scope of the interest (identical or merely similar) it allegedly has . . . and specify the extent any legal interests overlapped with commercial interests or other conversations." *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 72 (M.D.N.C. 1986). A party cannot establish a common interest

by relying "solely on counsel's conclusory allegation that the communications were privileged based on the common interest in the [] litigation." *Id.*

Prowess's assertion of the common interest privilege is deficient for several reasons. First, the "common interest agreement" was not executed until November 29, 2012. Opp'n, Ex. 4. The last disputed deposition occurred on November 28, 2012. Accordingly, all of the conversations at issue took place well before any common interest agreement existed.[5]

Second, Prowess has failed to establish that it and UMB share "a common interest about a legal matter." *See United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996). In *Aramony*, the defendant, William Aramony, was an employee of United Way of America ("UWA") who faced charges of defrauding UWA. *Id.* at 1372-73. During UWA's internal investigation of the fraud allegations, UWA hired attorneys to give legal advice concerning UWA's response to the investigation. *Id.* at 1388. Aramony argued that his communications with UWA's attorneys were protected by the common interest doctrine because Aramony and UWA had a common strategy in investigating the allegations against Aramony, and had a common interest in developing defenses to the criminal allegations. *Id.* at 1392. The court found that even though Aramony's defenses could "help preserve UWA's reputation," they were not a legal matter concerning UWA. *Id.* The court stated that if the allegations concerning Aramony could have subjected UWA to criminal or civil liability, Aramony's claim of privilege would have been stronger. *Id.* Importantly, the court found that the common interest privilege did not apply

---

[5] Prowess asserts that this common interest agreement merely reaffirms the Master Agreement that UMB and Prowess entered into in 2003. However, the Master Agreement of 2003 does not discuss sharing privileged material, identify precisely what UMB and Prowess's common interest entailed, or mention any sort of mandated cooperation if Prowess is involved in litigation relating to the Asserted Patents.

because Aramony was unable to explain how UWA would have been affected by the fraud allegations. *Id.*

Similarly, here, Prowess has explained how UMB or any of the inventors will or could be affected by the lawsuit between Prowess and Raysearch. Prowess has not defined the nature and scope of the common interest, and has asserted only conclusory arguments by counsel.[6] In fact, Mr. Nguyen's deposition testimony belies Prowess's general assertion of a common litigation interest. Mr. Nguyen explained that

> [f]or my understanding, we help each other. But we don't have [sic] buy-in together. So if I ask them to help, they do. If they do, that's good. If they don't, I can't do nothing about it . . . [D]o they have to support me or they join with me, no, I don't think we have a contract like that. But so far, I think they [sic] very supportive.

Opp'n, Ex. 8, Nguyen Dep. 177:17-178:13. Thus, UMB and the inventors may be assisting Prowess in the litigation, but there is no evidence tending to show that they share a common interest in, or would be affected by, this lawsuit. For all of the reasons above, Prowess has failed to prove that the common interest privilege applies.

### b. Raysearch's Motion to Compel Information Related to Investigations by Prowess and the Inventors into Infringement and Validity of the Asserted Patents.

Raysearch next seeks to compel testimony relating to investigations completed by Prowess and the inventors, and the opinions drawn from those investigations, regarding the validity and infringement of the Asserted Patents. Specifically, Raysearch seeks information

---

[6] Paragraph 5 of the "Common Interest Agreement" also does not establish a sufficient common interest. It states that UMB and Prowess "have interests in common relating to defenses and/or potential defenses raised by Defendants including without limitation invalidity, non-infringement, and/or unenforceability of the Asserted Patents and also desire to save costs and conserve resources by sharing information and legal theories relating to the Asserted Patents." Opp'n, Ex. 4, at 2. This non-descriptive language does not explain how UMB or the inventors could be affected by this litigation, and it does not explain the scope of the alleged common interest.

relating to (1) Dr. Yu's, Dr. Fong's, and Dr. Shepard's investigations of the Asserted Patents, (2) Dr. Yu's and Dr. Fong's opinions regarding the validity and infringement of the Asserted Patents, and (3) the information that caused Mr. Nguyen to believe that Defendants infringed on the Asserted Patents. Prowess argues that information relating to these investigations, and the opinions drawn from the investigations, is "privileged" because the investigations were completed at the behest of Prowess's counsel after litigation was anticipated. *See* Opp'n 16, 19-20, 22-24, 26-27. This argument fails.

The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Put another way, "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* Similarly, while the work product protection may extend to documents prepared for an attorney in anticipation of litigation, "the facts underlying [such a document] are not [protected]." *Suggs v. Whitaker*, 152 F.R.D. 501, 507 (M.D.N.C. 1993) (citing *Nat'l Union Fire Ins.*, 967 F.2d at 984 n.5). "[A] witness may be interrogated at his deposition concerning the facts contained in the work product report." *Id.* Therefore, while Raysearch may not be able to recover the actual reports created by Prowess or the UMB inventors,[7] Prowess cannot shield the facts underlying these documents, and the opinions derived therefrom, simply because this information was included in communications to counsel for Prowess. *Upjohn*, 449 U.S. at 395.

---

[7] Raysearch does not seek to compel production of these documents.

Moreover, Prowess has failed to sufficiently explain why the disputed investigations are "privileged." For example, counsel for Prowess did not allow Dr. Yu to answer questions about what he did to investigate the similarities between the patented information and allegedly infringing information. Prowess avers that it properly instructed Dr. Yu not to answer because "Defendants sought to probe further and ask what Dr. Yu did, without qualification as to whether it involved a lawyer or not." Opp'n 17. However, it is Prowess's burden to establish privilege, not Raysearch's burden to establish a lack of privilege. Similarly, Prowess did not allow Dr. Shepard to answer questions about when he was first contacted by counsel for Prowess relating to this litigation. In support of this position, Prowess merely states that "counsel for Dr. Shepard stated that he would be permitted to provide the date so long as counsel for Defendants would not assert waiver of privilege . . . [b]ut defense counsel again refused." Opp'n 27 (internal citations omitted). These arguments do nothing to establish a basis for asserting that the investigations are "privileged," and because it is Prowess's burden to establish that the attorney-client privilege or work product protection applies, this Court will not speculate or "construct a scenario under which the documents could arguably be privileged." *Neuberger Berman*, 230 F.R.D. at 418. Raysearch must be allowed to depose the witnesses regarding their investigations and their conclusions drawn therefrom.

### c. Documents Identified in Dr. Shepard's Privilege Log.

The two documents identified on Dr. Shepard's privilege log are not protected by the attorney-client privilege or work product doctrine. Prowess argues that the first document is "privileged" because "communications to non-attorneys can be privileged if their dominant purpose is the rendition of legal services to the client, and the substance of the communication is transmitted to the lawyer shortly thereafter." Opp'n 28 (citing *Burlington Indus.*, 65 F.R.D. at

35-38). There are several flaws in this argument. First, the communication did not involve a lawyer, as it was sent by Dr. Shepard to Libby Hart-Wells, a patent agent, and Mr. Nguyen, CEO of Prowess. Second, there is no evidence that this communication was actually transmitted to a lawyer, and Prowess has failed to explain how Dr. Shepard sought legal services from non-lawyers. *Neuberger Berman*, 230 F.R.D. at 409-10 (holding that the party asserting the attorney-client privilege must prove that the privilege applies "by way of evidence, not just argument."). Finally, communications to patent agents are not subject to the attorney-client privilege. *See Burroughs Wellcome Co. v. Barr. Labs.*, 143 F.R.D. 611, 616 (E.D.N.C. 1992). Accordingly, Prowess has failed to establish that the first document is privileged.

The second document identified is authored by Dr. Shepard, has no recipients, and apparently includes "[c]omments and notes made on the application during prosecution of the patent reflecting attorney-client work and/or communication." Opp'n, Ex. E. Prowess argues that this document is work product protected because the application itself was prepared in anticipation of litigation by UMB's patent attorney. Opp'n 28-29. However, a review of the deposition testimony indicates that no specific litigation was anticipated when the document was created. Rather, the UMB patent attorney stated that he "always prepared [patent] applications with the mindset that there would be a potential for litigation. Opp'n, Ex. 18, Marks Dep. 88:17-89:2. The work product protection only extends to documents created because a specific litigation is anticipated, *Nat'l Union*, 967 F.2d at 984, and "[i]t is not enough . . . that the mere possibility of litigation exists." *Burlington Indus.*, 65 F.R.D. at 43. Prowess has not established that Dr. Shepard's notes on the application create any privilege. Therefore, the second document identified in Dr. Shepard's privilege log is not work product protected.

Because Prowess has not established any viable claims of privilege, Raysearch must be allowed to re-depose Dr. Yu, Dr. Fong, Mr. Nguyen, and Dr. Shepard about the topics discussed above.  Raysearch also seeks the fees and costs incurred in filing its motions to compel the testimony of Dr. Fong and Mr. Nguyen.  If a motion to compel is granted, the entity whose conduct necessitated the motion must pay the movant's reasonable expenses, including attorney's fees, unless their nondisclosure was "substantially justified" or other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).  My tentative view is that an award of fees and costs will be appropriate.  Raysearch's counsel shall submit an affidavit documenting its attorney's fees and expenses in filing its motions to compel the testimony of Dr. Fong and Mr. Nguyen by February 25, 2013.  Prowess shall have until March 11, 2013 to file its opposition to the award and the requested amount of fees and costs.

A separate order is entered herewith.


Dated: February 11, 2013                                /s/
                                                        Stephanie A. Gallagher
                                                        United States Magistrate Judge