**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>PROWESS, INC.,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td>Civil Case No. WDQ-11-1357</td></tr>
<tr><td>v.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>RAYSEARCH LABORATORIES AB, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \* \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiff Prowess, Inc. ("Prowess") and Defendants Raysearch Laboratories AB ("RaySearch"), Nucletron Corporation, and Philips Nuclear Medicine, Inc., f/k/a Philips Medical Systems (Cleveland), Inc. ("Philips"), present another discovery dispute in this patent infringement action.[1]   Prowess seeks to compel documents, deposition testimony, and interrogatory answers from Defendant Philips relating to Philips's financial and marketing information.  Pl. Mem. 6-7. This Memorandum Opinion addresses Prowess's Motion to Compel, ECF No. 160, Philips's Opposition, ECF No. 177, and Prowess's Reply thereto. ECF No. 186. A hearing is unnecessary in this case.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons stated herein, Prowess's Motion to Compel is GRANTED IN PART and DENIED IN PART.

**I.     Background**

Prowess alleges that Philips infringed on the Asserted Patents, of which Prowess is the exclusive licensee.  Am. Compl. ¶ 17.  The Asserted Patents involve computer software used in

---

[1] This case has been referred to me by Judge Quarles to resolve discovery disputes and related scheduling matters.  ECF No. 85.

radiation therapy for cancer treatment.  *Id.* ¶ 18.   According to the Amended Complaint, radiation therapy treatment plans currently use one of three strategies: fixed field beam delivery ("IMRT"), intensity modulated arc therapy ("IMAT"), and volumetric modulated arc therapy ("VMAT").  *Id.* ¶ 4.  Each of these strategies involve "shooting" beams of radiation at a tumor to impede or destroy the ability of cancerous cells to reproduce.  *Id.* ¶ 12.  The Asserted Patents were designed to address limitations in the IMRT and IMAT strategies.  *Id.* ¶ 15, 18.  Prowess alleges that Defendant RaySearch has been licensing infringing software to Defendant Philips, and that Philips has sold radiation therapy equipment that employs the infringing software.  *Id.* ¶ 19, 20.  Prowess and Philips agree that the Smart Arc and direct machine parameter optimization ("DMPO") products (the "accused products") sold or licensed by Philips are relevant to Prowess's infringement claims.  Pl. Mem. 26; Opp'n 15.   The PROS group within Philips licenses the accused products, along with additional hardware and software products for cancer treatment planning purposes.  *See* Pl. Mem., Ex. A 12:15-13:20.

## II.    Analysis

In its Motion, Prowess seeks to compel (1) production of certain financial documents, (2) depositions of Philips employees, and (3) supplementary responses to its "financial" interrogatories.  Pl. Mem. 6-7.  The dispute regarding each type of discovery will be addressed separately below.[2]

---

[2] Philips argues that Prowess's Motion should be denied for failure to engage in a sufficient meet and confer under Local Rule 104.7.  Opp'n 5-7.  Although the parties could have engaged in a more thorough meet and confer, this Court finds that both parties contributed to Prowess's failure to fully comply with Local Rule 104.7.  Therefore, this Court will not deny Prowess's Motion pursuant to the Local Rules.  This Court orders both parties to read the Local Rules regarding meet and confer requirements, and regarding cooperation and civility.  Moreover, this Court orders the parties to conduct future meet and confer conferences in person.  The party considering filing a discovery motion shall travel to opposing counsel's office for the in-person conference.

**a.   Prowess's Motion to Compel Production of Philips's Financial Documents**

Prowess seeks to compel the production of documents relating to (1) the revenues for all PROS modules, (2) the financial performance of the PROS group from January 9, 2007 to the present, (3) the monthly financial reports prepared by Ms. Seshagiri and Michael Tan from 2007 to the present, (4) Philips's price list for all of its modules, and (5) royalty payments made to RaySearch.  Pl. Mem. 6-7.  Pursuant to Fed. R. Civ. P. 34, a party may properly request relevant, non-privileged documents within the scope of discovery.  *Lynn v. Monarch Recovery Mgmt. Inc.*, 285 F.R.D. 350, 360 (D. Md. 2012).  Prowess argues that these documents are necessary for its computation of damages.  *Id.* at 27.  Philips presents several arguments regarding each category of information sought by Prowess.

*1.   Revenue for all PROS Modules*

First, relating to the revenue for all PROS modules, including IMRT and Biology, Philips argues that this information has not been requested in Prowess's Requests for Production or Interrogatories, the information is irrelevant, and the information has already been produced. Opp'n 8-11, 15-17, 17-18.  Contrary to Philips's first argument, Prowess has requested financial information for all products sold with the accused products.  In Interrogatory No. 1, Prowess asks for the identity of each Philips product, including other software or hardware, which has been made, used, licensed, sold, or distributed with DMPO.  Pl. Mem., Ex. B, at 10.  Prowess labels each product that has been sold with DMPO an "identified product."  *See id.*  In Interrogatory No. 2, Prowess asks for the revenue attributable to each "identified product."  *Id.* at 10-11; *see also* Pl. Mem., Ex. C, at 10-13 (requesting documents relating to each "identified product").  Prowess's discovery requests are fairly read as requests for all products sold by Philips that include a DMPO product in any way.  The memoranda and deposition testimony make clear that

Philips sells DMPO, which is a software license, in bundles along with other hardware and software options. Accordingly, this Court finds that Prowess has requested revenue information for all products sold by Philips that have been included in a sale of DMPO in any way.

Philips next argues that even if revenue information for each PROS product is relevant,[3] this information has already been produced. Opp'n 17-18. Specifically, Philips states that it has produced the sales orders of all PROS products within the relevant timeframe, and has informed Prowess that such documents were responsive to Prowess Interrogatories No. 2 and 5. *See id.*; Pl. Mem. Ex. HH, at 4, 7. After reading the deposition transcripts, Prowess's Motion, and its Reply, it appears as though Prowess desires spreadsheets itemizing the revenue attributable to each specific PROS module. *See, e.g.*, Pl. Mem. 27 (noting that Philips has only provided itemized revenues for DMPO and Smart Arc); Reply 10. Philips has provided spreadsheets delineating which sales included DMPO and Smart Arc, and the estimated revenue derived from DMPO and Smart Arc in each sale. Opp'n Ex. 19. However, Philips created these spreadsheets solely for litigation purposes, and Philips does not track revenue for each of its products alone. *Id.* at 15, 18. Philips only tracks revenue information for the PROS group as a whole. *See* Opp'n 15, 18; Pl. Mem. Ex. A 36:9-37:7, 95:3-8.[4] Most importantly, Prowess has access to every PROS sale made. *See, e.g.*, Opp'n, Ex. 26. Philips has also highlighted the specific sales orders that include DMPO and Smart Arc. *See* Opp'n, Ex. 19. Given the broad nature of Prowess's discovery requests, this Court will not force Philips to itemize revenue information for

---

[3] This Court need not determine whether this information is relevant, because Prowess's Motion is denied on other grounds.

[4] This request is also overbroad because Philips makes a large number of sales that do not include DMPO or Smart Arc in any way. For example, if Philips itemized its revenues by IMRT sales, this would capture revenue information for a product that can be, and is, sold without the accused products. *See, e.g.*, Pl. Mem. Ex. R 97:21-98:6.

each non-infringing PROS product, especially where Prowess itself possesses the information necessary to make this determination.  Prowess's motion to compel the revenue derived from each non-infringing PROS module is denied.

### 2. *Financial performance of Philips's PROS group*

Prowess next seeks production of documents reflecting the performance of the entire PROS group, including revenues, net profit, gross profit, expenses, and gross margin.[5]  Pl. Mem. 6.  Despite Ms. Seshagiri's testimony to the contrary, Philips argues that it has already produced this information through other custodians.  Opp'n 19-20.  In support of this argument, Philips provided specific Bates Numbers for the PROS financial documents sought by Prowess, and attached one such financial review to its Opposition.  Opp'n, Ex. 27.  Prowess has completely ignored this argument and Philips's financial review exhibit in its Reply, providing this Court with no reason to doubt Philips's assertion that it has already produced the PROS financial documents.  Accordingly, Prowess's motion to compel documents reflecting the performance of the PROS group is denied.

### 3. *Philips's Price List*

Third, Prowess seeks Philips's price list for all of its modules.  Pl. Mem. 7.  Philips first argues that Prowess has not requested this information.  Opp'n 21.  However, Prowess's Request for Production No. 9 seeks "[a]ll documents evidencing or relating to any analysis of and/or comment upon the value (monetary or otherwise) of the Identified Products."  Pl. Mem. Ex. C, at 13.  Prowess's Request for Production No. 1 defines an "Identified Product" as one that has been sold with DMPO.  *See id.* at 10.  As explained above, this Court finds that Prowess has requested

---

[5] This includes the monthly reports created by Ms. Seshagiri and potentially her predecessor, Michael Tan.

information for any PROS module sold with the accused products in a bundle.   Therefore, Prowess has requested Philips's price list.

Philips next argues that the prices of modules other than DMPO and Smart Arc are irrelevant.   Opp'n 21.   However, the prices of Philips's PROS modules may be relevant to Prowess's damages calculations if Philips sold such modules in a bundle with the accused products under the "convoyed sale" theory, the "entire market value rule," or any other measure of damages deemed appropriate by the trial court.   *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) (holding that unpatented products may be considered in damages calculations if patented and unpatented products "together were considered to be components of a single assembly or parts of a complete machine, or together they constituted a functional unit."); *Electro-Mechanical Corp. v. Power Distribution Prods., Inc.*, No. 1:11CV00071, 2013 WL 663302, at *13 (W.D. Va. Feb. 22, 2013) (holding that unpatented items may be considered in damages calculations if the infringing components were the basis for the customer demand, the infringing and non-infringing components were sold together, and the components are analogous to a single functioning unit).

Trial courts have a large degree of flexibility in awarding damages in patent infringement actions.   *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863-64 (Fed. Cir. 1985). Moreover, the scope of relevant information is more expansive during discovery than at trial, because Fed. R. Civ. P. 26 allows for discovery of information that "appears reasonably calculated to lead to the discovery of admissible evidence."   At this stage in discovery, Philips has not met its burden in proving that the prices of its non-infringing products, which have been sold in bundles with the accused products, are irrelevant under each potential damages theory

that the trial court may find appropriate.[6]  *See Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009) (noting that a party objecting on the basis of relevance during discovery bears the burden of demonstrating that such objections are proper).

Lastly, Philips argues that even if the price list is relevant, it has already been produced. Opp'n 21.  Philips argues that the sales orders in its Exhibit 26 delineate the actual selling prices for all PROS modules.  *Id.*  After reviewing the exhibits provided, this Court is not convinced that Philips's sales orders adequately reflect the initial list price for each module.  Philips is therefore ordered to produce, on or before **April 15, 2013**, its price list for any modules that have been sold in a bundle with the accused products.

### 4.  *Royalty payments by Philips to Raysearch*

Prowess seeks to compel the production of information regarding royalties paid by Philips to Raysearch.  Pl. Mem. 7, 32.  Specifically, Prowess seeks royalties paid by Philips after 2009, because it alleges that it has only received forecasted royalty amounts after 2009.  Pl. Mem. 33; *see* Reply 14.  Philips insists that it has already produced this information, and informed Prowess of this during Ms. Seshagiri's deposition.  Opp'n 21-22; Pl. Mem. Ex. A 264:20-265:8.  Prowess maintains that it does not have actual royalty information after 2009.

---

[6]  The trial court's discretion is merely limited to "adequate[ly] [] compensat[ing] for the infringement."  *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863 (Fed. Cir. 1985). Prowess may attempt to prove damages in several different ways, and although Prowess has not raised each potential theory of damages in its Motion and Reply, Philips has not met its burden of proving that the prices of non-infringing products, which have been bundled with infringing products, are entirely irrelevant.  For example, Philips has not clearly proven that Prowess cannot collect damages under the "entire market value rule" or the general "reasonable royalty" calculation.  Accordingly, at this stage of discovery, where the standard for relevance is highly permissive, this Court will not limit the trial court's ability to determine an appropriate damage award.  To be clear, this Court expresses no opinion on whether prices of, or revenues from, non-infringing products are admissible.  At trial, Prowess would still have the burden of proving the elements of each form of damages. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012) (noting that the patentee bears the burden of proving damages).

*See* Reply 14.  Philips cites certain document productions as responsive to Prowess's request for this royalty information, but has not provided the responsive documents for this Court's review. Accordingly, this Court is unable to determine, with any degree of certainty, whether the disputed documents have actually been produced.  The parties shall submit a brief **joint** memorandum to this Court by **April 15, 2013**, explaining whether the documents have already been produced.

### b.  Prowess's Motion to Compel 30(b)(6) Deposition Testimony Relating to Financial and Marketing Topics

Prowess argues that Philips's 30(b)(6) witnesses were ill prepared on financial and marketing topics, and seeks to compel further deposition testimony from Philips on these topics. Pl. Mem. 7, 33-35.  When a party seeks deposition testimony from a corporation, it must "describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6). In response, the corporation may designate one or more persons to testify to "information known or reasonably available to the organization."  *Id.*  While Rule 30(b)(6) does not require "absolute perfection in preparation," the corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the requesting party and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed . . . as to the relevant subject matters."  *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005).  To put forth a good faith effort, the party must attempt to "collect information, review documents, and interview employees with personal knowledge."  *Id.*  Certainly, Rule 30(b)(6) requires a corporation to prepare its designees "beyond matters personally known to the designee or to matters in which that designee was personally involved."  *Poole v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000).

### 1. Financial topics

Prowess and Philips agreed that Ms. Seshagiri would be deposed with respect to Philips's financial information.  Pl. Mem. Ex. W, Ex. X; Opp'n 23.  Specifically, Prowess sought testimony on noticed financial topics 2, 10, 28, and 29.  Pl. Mem. Ex. W; Ex. S.  These topics seek information regarding the quantity of identified products sold, the revenues and profits derived from such sales, purchasing agreements concerning the identified products, financial information of the business group responsible for selling the identified products, and pricing practices for the identified products.  *See* Pl. Mem. Ex. S.  Prowess argues that Ms. Seshagiri was not prepared to testify about anything other than information within her personal knowledge, and therefore seeks a continuation of its 30(b)(6) deposition on financial topics.  Pl. Mem. 10, 33-34.  Philips argues that Ms. Seshagiri was prepared to testify on the noticed financial matters, and that Ms. Seshagiri was not required to have knowledge of every document containing numbers.  Opp'n 23.  After reviewing the transcript of Ms. Seshagiri's deposition, this Court finds that both parties are partially correct.

This Court finds that Ms. Seshagiri was well prepared for most of the financial questions posed by Prowess.  However, there are many questions that Ms. Seshagiri could have been more prepared to answer.  Although Fed. R. Civ. P. 30(b)(6) does not require "absolute perfection in preparation," Ms. Seshagiri did not know anything about several documents not authored by her, including several authored by the General Manager of PROS, Susan Wallace.[7]  *See, e.g.*, Pl. Mem. Ex. A 206:10-208:17; 211:10-212:1; 213:6-20; 214:20-215:8; 218:3-17; 221:20-222:11; 226:5-20; 234:21-237:11.  On several occasions, Ms. Seshagiri noted that she could not speak

---

[7] Susan Wallace is the General Manager of PROS, Ms. Seshagiri reports indirectly to Ms. Wallace, and Ms. Seshagiri prepares a financial report for Susan Wallace every month.  *Id.* at 18:20-22, 22:16-19, 26:5-8.

about documents she did not create.  In addition, Philips suggests that Prowess should have deposed Susan Wallace because she was the custodian of those documents.  Opp'n 26.  While Philips is correct that it is not required to produce a witness who has knowledge of every document containing numbers, it is still required to prepare its 30(b)(6) witness to testify about relevant financial information that may be outside of her personal knowledge.  *See Poole*, 192 F.R.D. at 504.  The deposition testimony indicates that some of the documents, about which Ms. Seshagiri could not provide information, could be relevant to this case.[8]  These documents have not been attached as exhibits, making it impossible for this Court to determine whether they are in fact relevant.  Because the party resisting discovery bears the burden of proving that the information sought is not relevant and discoverable, *Desrosiers*, 675 F. Supp. 2d at 601, this Court must find that Prowess is entitled to re-depose Philips on a limited basis.

To be clear, Prowess's continued 30(b)(6) deposition on financial topics is limited to a maximum of three hours, and is limited to questions about the documents to which Ms. Seshagiri could not provide answers at her initial 30(b)(6) deposition.  As stated above, Ms. Seshagiri was well-prepared for most of Prowess's questions.  Therefore, Prowess may not use the deposition to explore additional information or novel legal theories.  In addition, Philips, and not Prowess, may select its 30(b)(6) witness.  *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296 (D. Md. 2008) (stating that the noticed corporation, not the deposing party, selects the 30(b)(6) designee).  The parties shall submit a **joint** status report to this Court on or before **April 15, 2013**, denoting the specific documents that may be discussed, consistent with this memorandum, in the continued 30(b)(6) deposition.

---

[8] This Court has not been provided with any of the documents that Ms. Seshagiri could not testify to, and the deposition testimony is not clear enough to allow this Court to determine whether such documents are in fact related to the noticed financial topics.

2.   *Marketing topics*

Prowess next argues that it is entitled to a continuation of its 30(b)(6) deposition of Philips regarding marketing information.   Pl. Mem. 7, 34-35.   Prowess claims that it was scheduled to take the 30(b)(6) deposition of Mr. Kaus, who had been identified as the Philips employee with the most knowledge on marketing topics.   *Id.*   This deposition never occurred, however, because Mr. Kaus is no longer employed by Philips, and Philips allegedly could not find Mr. Kaus.   *Id.* at 35.   Prowess argues that Philips must produce Mr. Kaus or another 30(b)(6) witness on marketing topics.   *Id.*   Philips counters by arguing that it has produced a knowledgeable 30(b)(6) witness on marketing topics, Mr. Terry Ward.   Opp'n 26.   In addition, Philips has provided Mr. Bzdusek as an alternate to Mr. Kaus, but has refused to designate him as a 30(b)(6) witness on marketing topics.   Reply 19, Ex. XX.   Philips argues that it never agreed to designate Mr. Kaus or Mr. Bzdusek as a 30(b)(6) witness.   Opp'n 27.

After reviewing Mr. Ward's deposition transcript, this Court finds that Philips has produced a knowledgeable 30(b)(6) witness on marketing topics.   Mr. Ward had seen and read Prowess's 30(b)(6) notice of deposition, and stated that he was prepared to testify as to all of the topics identified in that notice.   Pl. Mem., Ex. R 11:20-13:12.   Mr. Ward prepared for the deposition by speaking with Philips employees to gather the necessary information.   *See id.* at 13:8-12.   Mr. Ward testified that he had spoken with Mr. Kaus, and potentially Abhi Chakrabarti, relating to marketing information.   *Id.* at 18:12-19:16, 33:3-13.

Most importantly, Mr. Ward was able to provide substantive answers to almost all of Prowess's questions about marketing.   For example, Mr. Ward explained a marketing document identified by Prowess, and further explained Philips's marketing process.   *Id.* at 176:6-179:2. Specifically, Mr. Ward was able to explain that Philips marketed its products to clinics through

sales training, and promoted their products at specific trade shows.  *Id.* at 178:2-12.  Mr. Ward was also able to explain that Philips looked into marketing its Biology module, but has not marketed this product on a regular basis.  *Id.* at 97:7-18.

Prowess cites to specific portions of Mr. Ward's testimony in an attempt to prove that he was not prepared.  First, Prowess argues that Mr. Ward was unprepared because he did not know if Smart Arc was "well-received," and had not seen "any recent news articles touting the benefits of Smart Arc."  *Id.* at 188:10-23.  Prowess does not explain how these questions relate to Philips's process for marketing its products, and this Court does not find that Mr. Ward's lack of knowledge on these questions robs Prowess of the marketing information it seeks.  Next, Prowess makes much out of Mr. Ward's statement that he could not "enumerate all of the specifics" relating to Philips's marketing endeavors.  Reply 18, Pl. Mem. Ex. R. 177:12-25. However, when pressed further by Prowess, Mr. Ward explained that Philips uses sales training and trade shows, such as AAPM, ASTRO, AAMD, JASTRO, and ESTRO, to market its products.  Pl. Mem. Ex. R 178:2-18.  Mr. Ward was also able to explain that the sales staff was trained, that the staff then promotes Philips's products, and that they sometimes provide "collateral and cut sheets."  *Id.* at 178:13-18.  Mr. Ward even asked counsel for Prowess if there was a specific form of media that Prowess was asking about relating to marketing, and counsel for Prowess responded, "[n]o, not in that first question."  *Id.* at 178:17-19.  Prowess then asked one question about whether Philips had a marketing budget, and one question about how many trade shows there were per year, and probed no further into the specifics of Philips's marketing process.  *Id.* at 178:19-179:8.

Prowess next argues that Mr. Ward was not prepared because he could not provide specifics about Philips's marketing budget.  Reply 18.  On a closer read, however, Mr. Ward

adequately responded to the question asked. Mr. Ward was asked if there was budget for marketing. Pl. Mem. Ex. R 178:19-20. Mr. Ward replied, "[t]here is a budget for marketing." *Id.* at 178:21. Although Mr. Ward then stated that he could not provide specifics, Mr. Ward sufficiently answered the question presented. Prowess did not ask any further questions about the marketing budget. Prowess next argues that Mr. Ward was not prepared because he could not testify regarding the importance of license exclusivity. Reply 18. Mr. Ward did explain that exclusivity was sought as a business motivation, likely because of the value of the products. Pl. Mem. Ex. R. 102:6-103:2. Moreover, Prowess fails to explain why monies paid by Philips to RaySearch for license exclusivity are relevant to marketing topics, and fails to explain how Mr. Ward's failure to provide a more specific answer to this question prejudices them in any way. Accordingly, Prowess has failed to demonstrate that Philips's 30(b)(6) witness was unprepared to testify regarding marketing topics.

In addition, based on the exhibits presented to this Court, Philips never agreed to designate an additional 30(b)(6) witness on marketing topics. Clearly, the parties had discussed a deposition of Mr. Kaus, who was identified as "most knowledgeable" with respect to marketing topics. *See* Pl. Mem. Ex. V. However, nowhere in the exhibits highlighted by the parties is there any support for Prowess's subjective belief that Philips agreed to designate an additional 30(b)(6) witness on marketing topics. For example, Prowess's notice of deposition of Mr. Bzdusek does not indicate that it is a 30(b)(6) deposition. Ex. MM. Philips cannot be faulted for Prowess's failure to ask additional marketing questions, or for Prowess's failure to demonstrate what relevant marketing information it did not receive in its 30(b)(6) deposition of Mr. Ward. Prowess's Motion to Compel additional 30(b)(6) testimony on marketing topics is denied.

### c.   Prowess's Motion to Compel Personal Depositions of Susan Wallace

Prowess, in its Reply, makes clear that it also seeks to compel the personal deposition of Susan Wallace.[9]   This Court finds that Prowess's Motion did not clearly explain whether it sought Susan Wallace for a 30(b)(6) deposition, or for a personal deposition.   *See* Pl. Mem. 33-34.   Philips, unsure of Prowess's position, requested leave to file a surreply if Prowess addressed a personal deposition of Ms. Wallace in its Reply.   Opp'n 25-26 n.27.   Prowess did address a personal deposition of Ms. Wallace in its Reply.   Reply 17-18.   Philips should have a chance to respond to this argument, raised for the first time in earnest in Prowess's Reply.   Philips shall file its surreply on or before **April 15, 2013**, and it shall be limited to whether Prowess may depose Ms. Wallace in her personal capacity.

### d.   Interrogatories

Lastly, Prowess seeks to compel more complete answers to Interrogatories No. 2, 3, 5, 6, and 9.   Pl. Mem. 7, 35.   Fed. R. Civ. P. 33 governs interrogatories to parties.   *Lynn*, 285 F.R.D. at 355.   Interrogatories may relate to "any matter that may be inquired into under Rule 26(b)."   Fed. R. Civ. P. 33(a)(2).   Each disputed interrogatory will be addressed separately below.

#### 1.   Interrogatory No. 2

Interrogatory No. 2 seeks to determine the quantity of, and the revenue and profit derived from, each identified product, upgrade, or associated hardware sold by Philips in each quarter since January 9, 2007.   Pl. Mem. Ex. B, at 10-11.   Philips responded by stating that it does not keep information organized by quarter, but that it has sold 644 licenses that included DMPO in

---

[9] Prowess originally sought the personal deposition of Mr. Kaus or Mr. Bzdusek, but Mr. Bzdusek has since been deposed.

the relevant timeframe.  Pl. Mem. Ex. E, at 6.  This answer sufficiently responds to the quantity portion of Interrogatory No. 2.[10]

As for specific revenue information, Philips has created documents, and discussed these documents in 30(b)(6) depositions, which delineate the amount of revenue received from each sale of an accused product.  *See* Opp'n Ex. 19.  As discussed above, this Court will not force Philips to create revenue estimates for non-accused products, especially because Prowess has the information to create these estimates by using the sales orders provided by Philips.

Similarly, Philips does not track profit by module sold, but rather, it tracks profit based on sales and expenses of the entire PROS group.  *See, e.g.*, Pl. Mem. Ex. A 36:9-22.  Philips has produced information regarding profits made by the PROS group.  *See* Opp'n Ex. 27.  Therefore, Philips has provided a sufficient response to Interrogatory No. 2, and Prowess's motion to compel an additional response to this interrogatory is denied.

### 2.   *Interrogatory No. 3*

Interrogatory No. 3 seeks the identity of persons or entities involved in the research, design, development, sale, or marketing of the identified products, and the identity of persons or entities that may be liable to Philips for all or part of the judgment or costs in this litigation.  Pl. Mem., Ex. B, at 11-12.  Philips has produced a list of Philips employees, current and former, involved in the research, design, development, programming, integration, and marketing of the identified products, Pl. Mem. Ex. E, at 7-8, and has supplemented this list.  Pl. Mem. Ex. HH, at 4-5.  Philips has also designated documents as being responsive to this interrogatory, and has stated that Prowess is liable to Philips for all of their expenses incurred in this litigation.  *Id.* at 5.

---

[10] Prowess can determine the quantity of the non-infringing modules sold with the accused products by looking to the sales orders provided by Philips.

Prowess argues that Philips has failed to provide the names of any entities involved in the research, design, sale, or marketing of the identified products.  Pl. Mem. 36.  Philips's response to this interrogatory is complete, except for its failure to name responsive entities.  On or before **April 15, 2013**, Philips should provide a list of entities responsive to this interrogatory, if any such entities exist.

### 3.  Interrogatory No. 5

Interrogatory No. 5 seeks information regarding the parties to any agreements with Philips concerning the identified products, the amounts paid pursuant to any such agreement, the identity of the person "most knowledgeable" about the subject matter of the interrogatory, and the identity of responsive documents.  Pl. Mem. Ex. B, at 13.  Philips has provided the Bates numbers for documents responsive to this interrogatory.  Pl. Mem. Ex. HH, at 6-7.  In its Motion, Prowess argues that Philips has failed to include purchasing agreements, and has failed to include the amount that Philips has been paid by year.  Pl. Mem. 36.  Philips argues that Prowess has ignored Philips's supplemental response to Interrogatory No. 5, in which Philips provided sales orders for all PROS products sold with or without DMPO.  Opp'n 28.  Prowess counters by arguing that Philips improperly referred to 30,000 pages of documents as responsive to Interrogatory No. 5.  Reply 20-21.

This Court finds that Philips's response is sufficient.  Philips has provided the purchasing agreements, as requested by Prowess.  *See, e.g.*, Opp'n Ex. 26.  Philips has created spreadsheets for revenues received by year for DMPO and Smart Arc.  Opp'n Ex. 19.  Therefore, Philips has provided the documents and information sought by Prowess.  Although the sales orders produced by Philips are voluminous, this Court does not find that Philips has failed to specify which documents contain the information sought in the interrogatory.  *See Minter v. Wells Fargo Bank*,

*N.A.*, 286 F.R.D. 273, 278-79 (D. Md. 2012).  Prowess sought all agreements between Philips and any other entity relating to the accused products, and this is what Philips has provided. Moreover, Philips has narrowed the scope of responsive documents by providing a spreadsheet with order numbers for sales including the accused products.  *See* Opp'n Ex. 19.  Because the burden would be the same for either party to further analyze the responsive documents, and because Philips has already shouldered some of this burden, Prowess's motion to compel an additional response to Interrogatory No. 5 is denied.  *See Minter*, 286 F.R.D. at 277-79.

4.   *Interrogatory No. 6*

Interrogatory No. 6 asks Philips to explain the amount of damages it believes Prowess would be entitled to recover if the court finds that Philips infringed on the asserted patents.  Pl. Mem. Ex. B, at 6.  Philips objected to this interrogatory, stating that it is premature because the date for initial disclosure of expert witnesses had not yet passed.  Pl. Mem. Ex. E, at 10-11. Philips also responded by stating that it does not believe Prowess is entitled to any damages.  *Id.*

Prowess's motion to compel an additional response to Interrogatory No. 6 is denied. Prowess has not explained which method of damages it will pursue, making it exceedingly difficult for Philips to provide a meaningful response to this interrogatory.  In addition, a review of the memoranda and exhibits make clear that Philips believes only DMPO and Smart Arc revenue is relevant to Prowess's damages determination.   Philips has already produced documents specifying the revenue attributable to these products.  Moreover, Philips's expert report on damages is not due until after the claim construction ruling.  Opp'n 29; ECF No. 84. For all of these reasons, Prowess is not entitled to an additional response to Interrogatory No. 6 at this time.

     5.   *Interrogatory No. 9*

Lastly, Interrogatory No. 9 asks Philips to identify its market share in the field of treatment planning in the United States, and to identify all related documents.  Pl. Mem. Ex. B, at 15.  Philips notes that it "has repeatedly told Prowess that it does not track market share internally, and that it relies on publicly available IMV reports."  Opp'n 29.  Prowess complains that the documents provided by Philips "do not include the sales revenue and number of customers used to arrive at this calculation."  Pl. Mem. 36-37.  However, as Philips explains, it does not arrive at any calculation of market share, because a third party creates the reports.  Opp'n 29.  Therefore, Prowess's motion to compel an additional response to Interrogatory No. 9 is denied.

### e.  Sanctions

Both parties move to recover the costs and attorney's fees incurred in preparing their memoranda in this dispute.  Because Prowess's Motion has been granted in part and denied in part, and because neither party's position appears to have been substantially unjustified, this Court finds that neither party should be sanctioned.  Counsel are urged, in future dealings, to spend less time formulating accusations of bad faith and more time seeking mutually acceptable resolutions to discovery problems, which could save substantial time and expense for all parties.

## III.  Conclusion

For the foregoing reasons, Prowess's Motion to Compel is GRANTED IN PART and DENIED IN PART.  A separate order is entered herewith.


Dated: April 1, 2013                _____/s/_____
                                  Stephanie A. Gallagher
                                  United States Magistrate Judge