**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PROWESS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No. WDQ-11-1357 |
| v. | * | |
| | * | |
| RAYSEARCH LABORATORIES AB, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this patent infringement action, Defendants RaySearch Laboratories AB, Nucletron Corporation, and Philips Nuclear Medicine, Inc., f/k/a Philips Medical Systems (Cleveland), Inc. (collectively "Defendants") filed four motions to compel deposition testimony. Specifically, Defendants moved to compel the deposition testimony of third parties Dr. Xinsheng Yu and Dr. David Shepard [ECF Nos. 123, 138], Prowess's Director of Engineering Dr. Wilson Fong [ECF No. 129], and Prowess's CEO John Nguyen [ECF No. 131]. Prowess also filed a motion for *in camera* review of a document related to Defendants' motions. [ECF No. 152]. On February 11, 2013, this Court granted Defendants' motions and denied Prowess's motion. [ECF No. 189]. On February 28, 2013, Prowess filed an objection to these rulings pursuant to Rule 72, in which Prowess presented new legal arguments. [ECF No. 199]. As a result, Judge Quarles referred Prowess's Objection to this Court to address the new legal arguments, along with the original issues. [ECF No. 223].

This Memorandum Opinion supersedes the original memorandum opinion in this matter [ECF No. 189], and addresses the four motions to compel described above, Prowess's consolidated Opposition to these motions [ECF No. 154], Defendants' consolidated Reply thereto [ECF No. 171], Prowess's Objection [ECF No. 199], Defendants' Opposition [ECF No.

207], Prowess's Reply thereto [ECF No. 218], Prowess's motion for *in camera* review [ECF No. 152], Defendants' opposition [ECF No. 163], and Prowess's reply thereto [ECF No. 181]. A hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, Defendants' motions to compel are GRANTED, and Prowess's motion for *in camera* review is DENIED.

## I. Background

Prowess alleges that Defendants infringed on two patents, the '008 and '591 patents (the "Asserted Patents"). Second Am. Compl. ¶ 19-21. The Asserted patents were invented by Dr. Matthew A. Earl, Dr. David M. Shepard, and Dr. Xinsheng Yu. *Id.* at ¶ 16, 22. All three named inventors worked for the University of Maryland-Baltimore ("UMB") when they created the methods for radiation treatment underlying the Asserted Patents. Pl. Opp'n 4-5. Prowess is the exclusive licensee of the Asserted Patents, and UMB is the assignee. Second Am. Compl. ¶ 17; Pl. Opp'n 5. Dr. Yu was deposed on October 22, 2012, and Dr. Shepard was deposed on November 28, 2012. Pl. Opp'n 6-10. Prowess's CEO, Mr. Nguyen, was deposed on November 6, 2012, and Prowess's Director of Engineering, Dr. Fong, was deposed on November 8, 2012. *Id.* During these depositions, counsel for Prowess, who represented all four individuals, instructed the witnesses not to answer certain questions, asserting the attorney-client privilege, work product protection, and a common interest privilege between UMB and Prowess. Defendants thereafter filed the instant motions to compel with this Court, seeking to re-depose the four witnesses to obtain responses to the unanswered questions.

## II. Legal Standards

The purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests

in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The party asserting the attorney-client privilege must prove that there was (1) a communication, (2) between privileged persons, (3) in confidence, (4) for the purpose of seeking, obtaining, or providing legal assistance to the client. *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447, at *4 (D. Md. Dec. 9, 2010); *see United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). Because the attorney-client privilege interferes with the truth seeking process, it is "to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). The proponent of the privilege bears the burden of demonstrating each of the elements of the privilege. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).

Prowess has also asserted the work product protection, which "arises from different circumstances" and protects different interests than the attorney-client privilege. *Nat'l Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 n.4 (4th Cir. 1992); *Nutramax Labs., Inc. v. Twin Labs., Inc.*, 183 F.R.D. 458, 464 n.10 (D. Md. 1998). The proponent of the work product doctrine bears the burden of proving that the documents or communications at issue were created "in anticipation of litigation," and that they were prepared "by or for another party or its representative." *See* Fed. R. Civ. P. 26(a)(3)(A); *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 231-32 (4th Cir. 2011).

The common interest privilege is an extension of the attorney-client privilege and work product protection. *In re Grand Jury Subpoenas 89-3 & 89-4*, 902 F.2d 244, 249 (4th Cir. 1990). To be protected under this privilege, communications between parties "must first satisfy the traditional requisites for the attorney-client or work product privilege." *Glynn v. EDO Corp.*, Civil No. JFM-07-01660, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010). After establishing

the elements of the attorney-client privilege or work product protection, the proponent of the common interest privilege must also demonstrate that "(1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived." *Id.* (citing *In re Grand Jury Subpoenas*, 902 F.2d at 248-49).

## III. Analysis

From the outset, it should be noted that Prowess's Objection largely presents new arguments regarding the secondary elements of the common interest privilege, such as whether UMB and Prowess share an identical legal interest. However, the proponent of the common interest privilege "must first satisfy the traditional requisites for the attorney-client and work product privilege." *Glynn*, 2010 WL 3294347, at *7. As explained in detail below, Prowess has failed to prove the requisite elements of the attorney-client privilege or work product protection. Therefore, Prowess's new arguments regarding the secondary elements of the common interest privilege need not be addressed on their merits.

Apparently recognizing the possibility of such a finding, Prowess asks this Court to declare that it and UMB share a common interest, even if no underlying privilege or protection is found. Obj. 19. This Court declines to determine whether or not Prowess and UMB share a common interest by virtue of a patentee/exclusive licensee relationship, a written agreement, or any other grounds, because it is not necessary for the resolution of the motions to compel. This Memorandum Opinion finds only that Prowess has failed to prove the applicability of the common interest privilege to the specific communications and information disputed in the pending motions.[1] Similarly, this Court does not find that communications among the inventors

---

[1] Prowess discusses several additional documents and communications in its Objection, including: (1) the infringement analysis prepared by Prowess's former litigation counsel, (2) communications between

or between Prowess and the inventors can *never* be privileged or protected. This Court merely holds that, based on the record presented, Prowess has failed to prove the applicability of the privilege or protection to the disputed communications.

### a. Motion to Compel Testimony of Dr. Yu

Defendants move to compel deposition testimony from Dr. Yu. As stated above, Dr. Yu is an inventor of the Asserted Patents, he worked for UMB when the Asserted Patents were designed, and he is not a party to this litigation.[2] Specifically, Defendants have moved to compel responses to the following five lines of questioning: (1) Dr. Yu's discussions with Mr. Nguyen about this lawsuit, (2) what Dr. Yu has done to investigate whether Defendants infringed on the Asserted Patents, (3) Dr. Yu's discussions with Dr. Earl regarding Defendants' products, (4) whether Dr. Johan Lof's doctoral thesis ("the Lof thesis") contains the same ideas as the Asserted Patents, and (5) Dr. Yu's opinion on whether the Lof thesis invalidates the Asserted Patents. Def. Mot. to Compel Yu 3. Each line of questioning will be discussed in turn.

#### 1. Dr. Yu's Discussions with Mr. Nguyen

Defendants first move to compel testimony relating to Dr. Yu's discussions with Mr. Nguyen about the lawsuit. *Id.* at 3. Mr. Nguyen is the CEO of Prowess. Prowess argues that any such conversations about this lawsuit were conducted "at the instructions of an attorney." Pl. Opp'n, Ex. 10, Yu Dep. ("Yu Dep.") 60:5-18. At Dr. Yu's deposition, Prowess instructed him not to answer questions about these conversations. Defendants then asked Dr. Yu whether the discussions took place in the presence of a lawyer, and if a lawyer had asked Dr. Yu to call

---

Prowess's counsel and UMB, and (3) Dr. Fong's written analysis. Any dispute relating to these documents or communications is not before this Court in Defendants' pending motions, and will not be addressed herein.

[2] Although Dr. Yu is also listed on Prowess's Organizational Chart as its "Chief Technology Adviser," Dr. Yu is a third party in this lawsuit. As Prowess notes in its Opposition, Dr. Yu is "an employee of the University of Maryland." Opp'n 16.

Mr. Nguyen. *Id.* at 60:21-61:5. Dr. Yu responded no to each question. *Id.* Defendants noted that they did not understand Prowess's assertion of privilege, and asked whether Prowess was still instructing Dr. Yu not to answer. *Id.* at 61:6-9. Prowess responded with the following:

> I am. If you can -- the way the question is asked, I'm not going to allow him to answer. Questions that you just asked him were proper. I'm not sure what -- how many conversations he's had but to the extent you are asking about all of them, I'm confident that at least some of them are privileged, and so I'm going to take the position that he can't answer the question as it's asked.

*Id.* at 61:10-18. After a few more exchanges, Prowess continued to instruct Dr. Yu not to answer questions about what he and Mr. Nguyen discussed after the lawsuit was filed.[3]

Prowess argues that Dr. Yu's discussions with Mr. Nguyen about this lawsuit are attorney-client privileged because they were made between "common interest part[ies]" for the purpose of assisting counsel in this litigation. Opp'n 16-17; Obj. 21. Prowess further argues that it is not seeking to protect all communications with the inventors, but is only claiming "privilege over all communications performed to facilitate the analyses of Prowess' [sic] litigation counsel." Pl. Reply 19. These arguments fail for several independent reasons.

First, Prowess has failed to prove that the communications between Dr. Yu and Mr. Nguyen were relayed to an attorney or were made for the purpose of rendering legal services to Prowess. Prowess argues that communications to non-attorneys may be privileged if their purpose is to facilitate the rendition of legal services. Opp'n 12 (citing *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26 (D. Md. 1974)). However, communications may only be attorney-client privileged if those communications were transmitted to attorneys. *See Burlington*, 65 F.R.D. at 38 (holding that intracorporate communications that are not sent directly to an attorney are still protected by the attorney-client privilege "where the dominant purpose of the

---

[3] Prowess did allow Dr. Yu to answer questions about conversations prior to when the lawsuit was filed, but Defendants still seek to compel conversations between Dr. Yu and Mr. Nguyen after that date.

communication is to facilitate the rendition of legal services to the client, *and the communication itself or the substance thereof is transmitted to the lawyer shortly thereafter*.") (emphasis added).

Prowess highlights deposition testimony of Dr. Yu indicating that legal counsel for Prowess sent him the Lof thesis. Obj. 24; Yu Dep. 100:4-16. Prowess also highlights deposition testimony of Dr. Fong illustrating that Dr. Fong conducted an investigation and analysis into infringement and validity, and that Dr. Fong completed a written analysis which was transmitted to counsel for Prowess. Obj. 21-24; Fong Dep. 40:10-41:20. These deposition excerpts, along with several others cited by Prowess, do nothing to prove that the contents of the specific communications *between Dr. Yu and Mr. Nguyen* were transmitted to an attorney for Prowess. This is no minor omission, as the entire purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients." *Upjohn*, 449 U.S. at 389. This Court will not extend the attorney-client privilege beyond its purpose to cover communications that do not clearly involve an attorney or the facilitation of legal services.

Prowess's assertion of the work product protection also fails. First, Prowess has failed to meet the burden of proving that the work product doctrine applies to the disputed communications, and has failed to provide more than "conclusory statements in its memoranda." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 418 (D. Md. 2005). Prowess asserts only vague and general attorney argument to support its proposition that conversations between Dr. Yu and Mr. Nguyen are work product protected. *See* Opp'n 16-17 (stating that Mr. Nguyen "expressly sought" Dr. Yu's technical opinions); Pl. Reply 18 (same); Yu Dep. 61:10-18 (stating that "at least some of the conversations" between Dr. Yu and Mr. Nguyen are privileged or work product protected). This Court cannot speculate or

construct a scenario under which the disputed communications could arguably be shielded from discovery. *See Neuberger*, 230 F.R.D. at 418.

More generally, Prowess has not demonstrated that it knows the content of the disputed communications. At Dr. Yu's deposition, Prowess took the position that at least "some of" the disputed communications are privileged or protected, and that Mr. Nguyen "*may* have had the discussion at the request of a lawyer." Yu Dep. 61:10-18, 62:15-19 (emphasis added). In fact, Prowess would only let Dr. Yu answer questions about conversations with Mr. Nguyen "[i]f you[4] can confirm that an attorney wasn't present and that that conversation did not occur at the request of an attorney." Yu Dep. 63:10-15. This assertion improperly shifts the burden to Defendants or Dr. Yu to establish a lack of privilege or protection, when the law clearly requires Prowess to affirmatively establish the applicability of the attorney-client privilege or work product protection. *Solis*, 644 F.3d at 231-32. Moreover, a party cannot truly know whether the communications it seeks to protect are privileged or protected without knowing the content of the communications. *See Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co.*, 460 F. Supp. 2d 915, 919-20 (S.D. Ind. 2006) (holding that conversations among plaintiffs conducted outside of counsel's presence that "concerned the lawsuit" were not privileged or protected because plaintiffs did not demonstrate that such conversations implicated "counsel's legal advice or mental impressions."). For all of the reasons above, Defendants' motion to compel Dr. Yu's discussions with Mr. Nguyen is granted.

However, this Court finds that the relevance of these questions, seeking to uncover the content of communications among inventors or between Prowess and the inventors, is minimal. *See id.* at 920 (denying the defendants' motion to re-depose witnesses, despite a finding that the

---

[4] This reference to "you," read in context, likely refers to counsel for Defendants. Even if "you" referred to Dr. Yu, Prowess improperly shifts the burden of proof for the privilege or protection.

disputed information was not privileged or protected, because the court questioned the "usefulness" of the line of questions regarding discussions among the plaintiffs). Defendants, therefore, will be permitted to re-depose Dr. Yu questions regarding his discussions with Mr. Nguyen, but the questions should be limited to the precise questions originally asked. This limitation will apply to all other re-deposition questions regarding discussions among inventors or among Prowess and the inventors. *See infra* Parts III.a.3, III.b.3-4, III.c.3., III.d.1.

### 2. *Dr. Yu's Investigative Process*

Defendants next seek to discover what Dr. Yu has done to investigate whether Defendants have infringed on the Asserted Patents. Def. Mot. to Compel Yu 3. During Dr. Yu's deposition, Prowess instructed Dr. Yu not to answer a question about his investigative process. Yu Dep. 78:10-79:7. This instruction only related to Dr. Yu's investigation after the lawsuit was filed. *Id.* Prowess's assertion of the privilege and protection fails because Prowess has not explained why Dr. Yu's investigative process is privileged or protected. Prowess simply argued that it properly instructed Dr. Yu not to answer questions about his investigations because, "Defendants sought to probe further and ask what Dr. Yu did, without qualification as to whether it involved a lawyer or not." Opp'n 17. This "argument" fails because it is Prowess's burden to prove privilege or protection.

Moreover, Dr. Yu has already testified regarding one piece of his investigative process, divulging the fact that an attorney sent the Lof thesis to Dr. Yu for his review. Yu Dep. 100:4-11. As for any other investigation taken by Dr. Yu, Prowess has not established that counsel was involved in designing any investigative steps. The work product doctrine "does not protect facts concerning the creation of work product or facts contained within the work product" unless revealing such facts would inherently reveal the attorney's mental impressions. *Garcia v. City of*

*El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003); *see also Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). In the absence of evidence that Dr. Yu's investigative process would reveal counsel's mental impressions or advice of counsel, Prowess's assertions lack merit.

### 3. Dr. Yu's Discussions with Dr. Shepard[5]

Defendants next seek to discover the content of conversations between Dr. Yu and Dr. Shepard relating to Dr. Yu's use of Pinnacle 3 and Smart Arc.[6] Yu Mot. to Compel 3; Yu Dep. 80:15-83:2. Prowess argues that Dr. Yu's post-lawsuit discussions are attorney-client privileged "because they were made for the primary purpose of assisting in this legal proceeding." Pl. Opp'n 16. Prowess mentions that the "communications subject to attorney-client protection would include . . . discussions between Prowess and [sic] inventors, and among inventors," and later argues that it provided "ample evidence to prove that the inventors' conversations were requested by attorneys." Obj. 20, 24. Prowess further argues that it is "only claiming privilege for communications performed to facilitate the analysis of Prowess' [sic] litigation counsel." Pl. Reply 19. Prowess's assertions fail.

First, the deposition transcripts make clear that Prowess is not certain whether the disputed conversations even fall within its expansive view of the attorney-client privilege or work product protection. Prowess asserted that these conversations are "privileged" because Dr. Yu "can't recall if the conversation took place either before or after [the lawsuit was filed]. Because he can't recall when it took place, *it could be privileged or not*." Yu Dep. 81:10-14 (emphasis added). Counsel for Prowess further stated that "[t]he conversation you are asking [Dr. Yu] about *may have* taken place after the lawsuit, so I'm going to instruct the witness not to

---

[5] Defendants' title for this portion of their motion to compel refers to Dr. Earl and Dr. Shepard, but the questions asked and Prowess's instruction not to answer only applied to Dr. Shepard's conversations with Dr. Yu. Yu Dep. 80:15-83:2.

[6] Pinnacle 3 is a treatment planning system of Defendant Philips. Smart Arc is an Accused Product.

answer the question."  Yu Dep. 82:18-21 (emphasis added).  It is not enough to assert that communications "could" be privileged or protected.  *See Solis*, 644 F.3d at 233.  Rather, Prowess must establish each element of the asserted privilege or protection.  *Id.* at 231-32.

Moreover, Prowess's assertion of privilege also fails because Prowess has not illustrated that the communications between Dr. Yu and Dr. Shepard were sent to counsel for Prowess, or that the conversations include legal advice or mental impressions of counsel.  It is also clear that Dr. Yu did not contact Dr. Shepard at the direction of a lawyer, and neither had a lawyer with them during this conversation.  Yu Dep. 81:16-82:6.  The mere fact that a lawsuit was filed does not make every subsequent communication attorney-client privileged or work product protected. For all of the reasons above, Defendants' motion to compel Dr. Yu's communication with Dr. Shepard about his testing of Pinnacle 3 and Smart Arc is granted.

### 4.  *Whether the Lof thesis contains the same ideas as the Asserted Patents*

Defendants next move to compel answers to questions about whether the Lof thesis includes the same ideas as those in the Asserted Patents.  Def. Mot. to Compel Yu 3.  Prowess instructed Dr. Yu not to answer questions about the Lof thesis, asserting the attorney-client privilege.  Yu Dep. 100:4-104:11.  Before receiving an instruction not to answer, Dr. Yu indicated that he did not review the Lof thesis until legal counsel sent it to him.  *Id.* at 100:4-11. Prowess then argued that

> if anything is done at the request of an attorney, then it's work product and/or attorney-client privilege . . . To the extent it wasn't done at the request of an attorney, I think you are entitled to it, but once we start to get into what was done at the request of an attorney, I think that's privileged.

*Id.* at 101:17-102:4.  Similarly, Prowess argued that because "all of the analyses and communications that occurred after the lawsuit was filed were conducted at the direction of Prowess' [sic] trial counsel to assist them in this litigation[,] [c]learly, all of this information is

privileged and not discoverable."  Pl. Opp'n 3, 18.  Prowess's assertion of the privilege and protection fails.

The attorney-client privilege does not shield facts underlying attorney-client privileged documents.  *Upjohn*, 449 U.S. at 395.  Defendants did not ask Dr. Yu what he communicated to Prowess's attorneys, but only whether he believes the Lof thesis contains similar ideas to the Asserted Patents.  Yu Dep. 101:4-6.  Defendants even provided Dr. Yu with the Lof thesis at his deposition.  Yu Dep. 100:4-7.  Accordingly, Dr. Yu's answers regarding the Lof thesis are not attorney-client privileged.  *See Upjohn*, 449 U.S. at 395 (stating that "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to an attorney.").

Similarly, regarding the work product protection, Dr. Yu was not asked what he told Prowess's attorneys, or what was included in his report to Prowess's attorneys.  Yu Dep. 101:4-6.  Prowess cannot shield Dr. Yu's views on the Lof thesis simply because Prowess asked Dr. Yu the same questions about the same thesis.  *See Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 122 (D.N.J. 2002) (stating that "where an attorney is incisive enough to recognize and question an opposing party on facts contained in protected documents, the fear that opposing counsel's work product would be revealed would thus become groundless.") (internal quotations omitted).  Facts underlying a work product protected report cannot be shielded from discovery.  *Suggs v. Whitaker*, 152 F.R.D. 501, 507 (M.D.N.C. 1993); *see Nat'l Union Fire Ins.*, 967 F.2d at 984 n.5 (stating that "a witness may be interrogated at his deposition concerning the facts contained in the work product report."); *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 635 (N.D. Okla. 2009) (stating that "courts have consistently held that the work product concept

furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned . . . even though the documents themselves may not be subject to discovery."). Therefore, Defendants' motion to compel Dr. Yu's views on whether the Lof thesis contains the same ideas as the Asserted Patents is granted.

*5. Dr. Yu's opinion on whether the Lof thesis invalidates the Asserted Patents*

Lastly, Prowess instructed Dr. Yu not to provide his opinion on whether the Lof thesis invalidates the Asserted Patents. Yu Dep. 100:20-104:12. Defendants have asserted that the Lof thesis, published in 2000, constitutes prior art which invalidates the Asserted Patents. Def. Mot. to Compel Yu 12. Prowess asserts that Dr. Yu's opinion on the Lof thesis is protected by the attorney-client privilege or work product doctrine, because Prowess's attorneys requested Dr. Yu's opinion on the same subject. Opp'n 18. As discussed more fully above, this information is not privileged or protected because Defendants did not seek to uncover the precise opinion Dr. Yu provided to Prowess's attorneys. Rather, Defendants provided the Lof thesis to Dr. Yu at his deposition, and merely asked his opinion at that time. Def. Reply 15.

Moreover, a defendant in a patent suit may properly ask an inventor deposition questions about the asserted patent and prior art. In *De Graffenried v. United States*, the court ordered the plaintiff patentee to answer deposition questions about his interpretation of the asserted patent, and about the "scope and implications of prior art."[7] 2 Cl. Ct. 640, 643-44 (Cl. Ct. 1983). Similarly, in *Advanced Cardiovascular Systems, Inc.*, the court ordered the plaintiff inventors "to disclose their understanding of terms used in the patent claims." *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 373 (N.D. Cal. 1992). The court there also noted that the inventors "cannot claim that their understanding [of key terms in their patent claim] (as opposed

---

[7] The court there also noted that the "scope and content of the prior art is often the focus of vigorous debate." *Id.* at 644.

to their private communications with counsel) is protected by privilege or as work product." *Id.* at 379. Prowess cannot claim that an inventor's opinions of his patent and prior art, which are commonly sought at this stage of discovery, are privileged or protected simply because Prowess asked for these opinions before Defendants did. Accordingly, Defendants' Motion to compel Dr. Yu's opinion on the Lof thesis is granted.

### b. Motion to Compel Testimony of Dr. Fong

Defendants next move to compel additional deposition testimony from Dr. Fong. Dr. Fong is the Director of Engineering at Prowess, and he reports directly to Prowess's CEO, Mr. Nguyen. Pl. Opp'n 8. In or around February 2010, Dr. Fong completed an analysis regarding the potential infringement and validity of the Asserted Patents. *Id.* Defendants seek to compel information relating to the following topics, which were withheld in Dr. Fong's deposition: (1) the nature of Dr. Fong's analysis into infringement of the Asserted Patents, (2) the facts underlying Dr. Fong's opinions regarding infringement and validity, (3) Dr. Fong's communications with Dr. Yu and Dr. Shepard about his analysis, and (4) Dr. Fong's communications with Dr. Yu relating to this lawsuit. Def. Mot. to Compel Fong 8. Each topic will be addressed separately below.

#### 1. The Nature of Dr. Fong's Analysis into Infringement

Defendants first move to compel Dr. Fong to answer questions about the steps he took when investigating whether the Asserted Patents had been infringed upon. More specifically, counsel for Prowess instructed Dr. Fong not to answer questions about (1) whether he had investigated Pinnacle, or the treatment planning systems of Elekta, Nucletron, or RaySearch, (2) the steps he took in his analysis of the Accused Products, including whether his analysis included product demonstrations, (3) whether he has completed an analysis or investigation other than his

February 2010 analysis, and (4) whether he had compared any products to Asserted Patents. Pl. Opp'n, Ex. 9 ("Fong Dep.") 64:15-67:16, 74:16-25, 93:15-99:9, 147:5-23.

Prowess's assertions have no merit because Prowess failed to explain why Dr. Fong's investigative steps were privileged or protected, and failed to present a specific argument regarding Dr. Fong's investigative steps. Rather, Prowess generally argued that the information sought by Defendants is "privileged" because Prowess sought Dr. Fong's technical opinions, and because "[a]ll of these topics and questions relate to Dr. Fong's written analysis and investigations after Prowess had engaged litigation counsel, *i.e.*, after February 8, 2010, which resulted in a legal opinion, and which ultimately resulted in this present [sic]." Opp'n 19-20. As noted above, Prowess cannot establish the applicability of the privilege or protection by general attorney argument, and without any factual analysis.

Even if Dr. Fong could be considered an agent of Prowess's attorneys, delving into an investigator's steps does not necessarily implicate work product protection. *See, e.g. Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Moreover, Prowess's argument that Dr. Fong was asked to complete an analysis for a lawyer does not establish that his specific investigative steps would somehow reveal legal advice or mental impressions of counsel, especially where Dr. Fong admitted he had no contact with counsel. Fong Dep. 83:23-25.

The scope of Defendants' re-deposition of Dr. Fong on his investigative steps requires some clarification. Dr. Fong has already testified that in his February 2010 investigation, he analyzed the publications referenced in Dr. Lof's letter to Mr. Nguyen, which include publications by Lof, Tervo, and DeGersem. Fong Dep. 38:6-41:20. Moreover, Dr. Fong testified that he did not review anything else for his February 2010 analysis. *Id.* at 55:2-13.

Therefore, Defendants already have sufficient answers about Dr. Fong's February 2010 investigative steps.

However, it is certainly possible that Dr. Fong has completed additional analyses of other products or systems, including but not limited to the Accused Products, Pinnacle, or the treatment planning systems of Elekta, Nucletron, or RaySearch. This Court will allow Defendants to ask whether or not Dr. Fong has completed such additional analyses. Dr. Fong is to respond "yes" or "no" to these questions. If Dr. Fong has completed an analysis of any particular product, Defendants may ask additional questions relating to those products. However, the follow-up questions must be limited in scope to uncovering the facts underlying Dr. Fong's analyses. For example, instead of asking what conclusions Dr. Fong drew at the time of his investigation of these products, Defendants may ask specific questions about the similarities and differences between the patents and products. Such questions will reveal the factual basis for Prowess's claims.

2. *The factual basis for Dr. Fong's Opinions that Defendants infringed on the Asserted Patents, and that the Asserted Patents are valid*

Defendants next seek to compel the factual basis for Dr. Fong's belief that Defendants' products infringe on the Asserted Patents, and that the Asserted Patents are valid. *See* Def. Opp'n 9-10. Prowess instructed Dr. Fong not to provide his opinions on infringement and validity during his deposition. *See* Fong Dep. 55:16-56:9, 75:16-79:10. Prowess seems to argue that Dr. Fong's opinions are privileged or protected because they were created for Prowess's litigation counsel for the purpose of assisting in this litigation. Pl. Opp'n 18-21. Prowess mentions Dr. Fong's written analysis in its Objection. Obj. 22, 23-24. Nonetheless, Prowess's assertion of the privilege and protection fails. Defendants seek to discover the factual basis for Prowess's infringement claims. As explained more thoroughly above, Prowess cannot shield

such facts from discovery simply because Dr. Fong also communicated these facts to counsel. *Upjohn*, 449 U.S. at 395; *see supra* pp. 12-15. However, Defendants are not permitted to ask questions about the precise opinion provided by Dr. Fong to Prowess's attorneys.

### 3. *Dr. Fong's communications with Dr. Yu and Dr. Shepard about his analysis*

At Dr. Fong's deposition, counsel for Prowess instructed Dr. Fong not to answer questions about (1) whether he had any discussions with Dr. Yu as part of his February 2010 investigation, Fong Dep. 80:14-83:25, and (2) whether he ever told Dr. Yu or Dr. Shepard that the relevant products infringe upon the Asserted Patents. Fong Dep. 86:23-88:7, 88:8-90:22. Defendants move to compel the contents of these communications.

First, Prowess's assertion of privilege and protection fails as applied to Dr. Fong's discussions with Dr. Yu relating to his February 2010 investigation. Prowess argues that the questions asked "about the nature of his analysis which was done at the direction of counsel in anticipation of litigation." *Id.* at 80:14-81:8. As with Dr. Yu's investigation above, Prowess has failed to demonstrate that Dr. Fong's investigative steps are privileged or protected.

Prowess has also failed to prove that the contents of these communications were relayed to an attorney. As explained above, communications to non-attorneys may only be attorney-client privileged if their purpose is to facilitate the rendition of legal services and if those communications were transmitted to attorneys. *See Burlington*, 65 F.R.D. at 38. Accordingly, Prowess's assertions of privilege and protection fail.

Next, counsel for Prowess instructed Dr. Fong not to answer questions about whether he ever told Dr. Yu or Dr. Shepard that Defendants' products infringed on the Asserted Patents. Fong Dep. 86:22-88:7, 88:8-90:22. Prowess based these instructions on its belief that the questions were asking for "conclusions and investigation results that [Dr. Fong] did at the

direction of counsel." *Id.* at 87:5-7, 89:8-90:15. Prowess argues that these discussions are attorney-client privileged because they were made between "common interest part[ies]" for the purpose of assisting counsel in this litigation. Opp'n 16-17; Obj. 21. Prowess further argues that it is not seeking to protect all communications with the inventors, but is only claiming "privilege over all communications performed to facilitate the analyses of Prowess' [sic] litigation counsel." Pl. Reply 19. These arguments fail for several reasons.

Much like the communications discussed above, Prowess fails to provide evidence that these specific communications, between Dr. Fong and Dr. Yu, and Dr. Fong and Dr. Shepard, were ever relayed to Prowess's attorneys. In addition, Prowess fails to explain how these specific conversations were made for the purpose of rendering legal services to Prowess. Prowess generally argues that the "inventors were needed to ensure that the analysis was technically accurate in order to facilitate counsel's legal opinions and advice." Obj. 21. Even if this is true, Prowess fails to explain how Dr. Fong telling an inventor that the Defendants' products infringed on the Asserted Patents helped facilitate the rendition of legal services to Prowess.

Prowess has also failed to prove that these communications are work product protected. In its Objection, Prowess discusses Dr. Fong's written analysis as work product protected, but has not provided a specific argument relating to the work product protection in relation to Dr. Fong's communications with Dr. Yu and Dr. Shepard about his investigation. In addition, Prowess has failed to demonstrate that the communications were ever sent to counsel, or that they "implicate counsel's legal advice or mental impressions." *See Reginald Martin*, 460 F. Supp. 2d at 919. For all of the reasons above, Defendants' motion to compel is granted.

*4. Dr. Fong's communications with Dr. Yu relating to this lawsuit*

Defendants next seek to discover the contents of conversations between Dr. Fong and Dr. Yu relating to this lawsuit. Counsel for Prowess instructed Dr. Fong not to answer questions on this topic because they "call[] for information that was part of this investigation at the direction of counsel." Fong Dep. 84:8-15. Prowess again argues that Dr. Fong's discussions with Dr. Yu about the lawsuit are attorney-client privileged because they were made between "common interest part[ies]" for the purpose of assisting counsel in this litigation. Opp'n 16-17; Obj. 21. Prowess further argues that it is only claiming "privilege over all communications performed to facilitate the analyses of Prowess' [sic] litigation counsel." Pl. Reply 19.

Again, Prowess's assertion of the privilege and protection fail. Prowess has failed to prove that the conversations between Dr. Fong and Dr. Yu were ever relayed to counsel for Prowess. Prowess has also failed to explain the general content of these communications, making it impossible for this Court to make an informed decision about whether these communications were made for the purpose of rendering legal services to Prowess. Defendants' motion is granted.

**c. Motion to Compel Testimony of Mr. Nguyen**

Defendants also move to compel deposition testimony from Mr. Nguyen, the CEO of Prowess. Defendants seek to compel information relating to the following topics, which were withheld during Mr. Nguyen's original deposition: (1) the basis for Mr. Nguyen's understanding that DAO and DMPO are similar, (2) the facts learned by Mr. Nguyen after he threatened to file a lawsuit that led him to file the instant lawsuit, and (3) one specific communication between Mr. Nguyen and UMB. Each topic will be addressed sequentially below.

### 1.  Mr. Nguyen's understanding of the similarities between DAO and DMPO

At Mr. Nguyen's deposition, he was instructed not to answer a question about the "basis for [his] understanding that the DAO and DMPO are the same."  Pl. Opp'n, Ex. 8, ("Nguyen Dep.") 17:16-18:15.  DAO is a Prowess technology that employs the teachings of the Asserted Patents.  Prowess asserts that DMPO, a product licensed or sold by at least one of the Defendants, infringes on the Asserted Patents.  Counsel for Prowess allowed Mr. Nguyen to explain his understanding, as of November 7, 2008, of the similarities between DAO and DMPO, but would not allow Mr. Nguyen to discuss the basis for his understanding at any later time.

This type of information is clearly not attorney-client privileged or work product protected.  Defendants merely seek to discover the factual basis for Prowess's claim that DAO and DMPO are similar.  Prowess appears to believe that anything learned by Prowess or Mr. Nguyen after Prowess anticipated litigation is privileged or protected.  However, a party cannot shield facts under the guise of the attorney client privilege or work product protection, even if those facts are learned after counsel is employed.  *See, e.g., Upjohn*, 449 U.S. at 395; *Suggs v. Whitaker*, 152 F.R.D. 501, 507 (M.D.N.C. 1993).  Accordingly, Defendants' motion is granted.

### 2.  Facts learned by Mr. Nguyen that led him to file the instant lawsuit

Similarly, Prowess instructed Mr. Nguyen not to answer a question about "[w]hat [he saw] in the intervening two years between when [he] threatened to sue and [] actually sued."  Nguyen Dep. 63:24-64:21.  When asked for the basis for this instruction not to answer, counsel for Prowess stated, "[o]n privilege basis.  You're asking him what he learned between now and filing the lawsuit.  I'm instructing him not to answer the question."  *Id.* at 64:13-17.  Again, Prowess erroneously attempts to shield facts from discovery simply because Mr. Nguyen learned of these facts after litigation was anticipated.  *See, e.g., Upjohn*, 449 U.S. at 395; *Suggs*, 152

F.R.D. at 507.  Defendants' motion to compel is granted.  Upon re-deposition, Defendants should

re-word these questions to ask directly about facts learned by Mr. Nguyen.

*3.  Communications between Mr. Nguyen and UMB*

Defendants move to compel the contents of one communication between Mr. Nguyen and

UMB about the instant lawsuit.  The following exchange took place at Mr. Nguyen's deposition:

> Q: When is the last time you talked to anybody at the University of Maryland about this
> lawsuit?
> A: I believe last year.  I believe last year.
> Q:  Who did you talk to?
> A: A technical counsel.  I can get the – two person, the communication with.
> Q: By "technical counsel" do you mean a technical person or do you mean a lawyer?
> A:  I think it's some kind of maybe lawyer.  *I don't know*.  But the one, like the legal
> stuff.
> Q: What did you talk about?

Nguyen Dep. 179:10-21 (emphasis added).  Counsel for Prowess instructed Mr. Nguyen not to

answer, asserting the common interest privilege.  *Id.* at 180:8-21.

Prowess's assertion fails for several reasons.  First, Prowess has again failed to establish

the underlying attorney-client privilege.  A party must prove that a communication was made

"for the purpose of seeking, obtaining, or providing legal assistance to the client."  *Flo Pac, LLC

v. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447, at *4 (D. Md. Dec. 9, 2010).  Prowess

has not explained the purpose of this communication, and has not provided any evidence that this

communication was made for the purpose of seeking legal assistance.  To uphold an assertion of

the attorney-client privilege, courts must be able to determine that the purpose of the

communication was to obtain legal advice.  *See id.* at *6 (holding that the proponent of the

privilege had proven that the client or clients there sought the advice of a lawyer with regard to a

possible patent infringement claim); *Richardson v. Sexual Assault/Spouse Abuse Resource Ctr.,

Inc.*, 764 F. Supp. 2d 736, 742 (D. Md. 2011) (holding that the disputed documents themselves,

reviewed *in camera*, indicated that the proponent sought legal assistance).  Despite having several attempts to clarify its position, Prowess has still failed to demonstrate that this communication was made for the purpose of obtaining legal advice.

This Court is aware that the disputed communication may relate to the instant litigation. However, "the privilege does not automatically attach to any and all communications between an attorney and a client."  *U.S. ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 244 (D.D.C. 2003).  This Court cannot uphold the assertion of the attorney-client privilege when the context and purpose of the communication is unknown.  This is especially true where Prowess has not established that a lawyer was involved in this specific conversation.[8]  *See* Nguyen Dep. 179:10-21.  On the current record, Prowess has failed to carry its burden of proof, and Defendants' motion is granted.  This is subject to change if Mr. Nguyen testifies that he was speaking to a lawyer for the purpose of seeking legal advice.

### d.  Motion to Compel Testimony of Dr. Shepard

Lastly, Defendants move to compel deposition testimony of Dr. Shepard, who is an inventor of the Asserted Patents.  Dr. Shepard was employed by UMB when the '008 patent application was filed.  Counsel for Prowess instructed Dr. Shepard not to answer questions regarding: (1) his conversations with Dr. Earl about Dr. Earl's deposition in this case, (2) whether Dr. Shepard investigated the validity of the Asserted Patents, (3) when Dr. Shepard was contacted for the first time by counsel relating to this litigation, and (4) when Dr. Shepard last reviewed the Asserted Patents.  Each line of questioning will be discussed in turn.

---

[8] Prowess's assertion of privilege also fails because it has not established that these communications were made between a lawyer and a client.  This is true even if UMB and Prowess are common interest parties. Because a proponent of the common interest privilege must first establish the elements of the attorney-client privilege, the proponent must prove that a lawyer was involved in the disputed conversations.

*1. Dr. Shepard's conversations with Dr. Earl about Dr. Earl's deposition*

Upon being asked whether he talked to Dr. Earl about Dr. Earl's deposition, Dr. Shepard stated, "I think that was a privileged conversation. Right?" Pl. Opp'n, Ex. 11, ("Shepard Dep.") 76:19-77:2. Counsel for Prowess then instructed Dr. Shepard not to answer the question, asserting that "what the witness has stated is there were conversations that included counsel. Those conversations are privileged." *Id.* at 77:9-11; *see* Opp'n 26. Prowess also argued that Dr. Shepard knew he was represented by counsel for Prowess, and that these conversations "were for the purpose of assisting Prowess' [sic] counsel in this litigation." Opp'n 26.

Prowess has failed to explain why these conversations are privileged. First, a simple review of the deposition testimony indicates that Dr. Shepard never testified that counsel for Prowess was involved in his conversations with Dr. Earl. *See* Shepard Dep. 76:22-77:2. Rather, Dr. Shepard merely stated that "I think that was a privileged conversation. Right?" *Id.* Therefore, there is no definitive proof that these communications were made between a client and an attorney. In addition, although the disputed communications related to Dr. Earl's deposition testimony, Prowess has failed to sufficiently explain how these communications between inventors were made to facilitate the rendition of legal services to Prowess. There is also no evidence that these communications "implicate counsel's legal advice or mental impressions." *See Reginald Martin*, 460 F. Supp. 2d at 919. For all of the reasons above, Prowess has failed to establish that conversations between Dr. Shepard and Dr. Earl about Dr. Earl's deposition are privileged or protected.

*2. Dr. Shepard's investigation into validity of the Asserted Patents*

Dr. Shepard was also instructed not to answer questions about whether he undertook any investigation to determine whether the Asserted Patents are valid, and whether he reviewed any

references in such investigations. Shepard Dep. 109:4-113:15. Prowess has failed to prove that Dr. Shepard's investigative steps are privileged or protected. There is no proof that Dr. Shepard was directed to take specific steps by an attorney, and there is no argument or evidence that revealing Dr. Shepard's investigative steps would reveal the mental impressions of counsel. *See Garcia*, 214 F.R.D. at 591. For all of those reasons, Defendants' motion is granted.

Upon re-deposition, Defendants will be permitted to ask about whether Dr. Shepard engaged in an investigation of the validity of the Asserted Patents. If Dr. Shepard has completed an investigation, Defendants may ask about Dr. Shepard's investigative steps. Any other follow-up questions regarding Dr. Shepard's analysis should be limited to discovering the factual basis for Dr. Shepard's current impressions regarding validity of the Asserted Patents. Defendants may present Dr. Shepard with the alleged prior art and the Asserted Patents at his deposition, and may ask him about both.

### 3. *When Dr. Shepard was first contacted by counsel in this case*

Defendants also seek to discover when Dr. Shepard was first contacted by counsel for this litigation. Shepard Dep. 113:17-114:2. Prowess failed to put forth any argument that this information is privileged or work product protected. It merely stated that "counsel for Dr. Shepard stated that he would be permitted to provide the date so long as counsel for Defendants would not assert waiver of privilege . . . [b]ut defense counsel again refused." Opp'n 27 (internal citations omitted).

Prowess has failed to meet its burden of proving that the date of first contact by counsel for Prowess is privileged or protected. Prowess has failed to explain why this date is privileged or protected, and it is not the role of this Court to invent a theory under which this disputed information is privileged or protected. *Neuberger*, 230 F.R.D. at 418. In addition, it is hard to

understand how the timing of counsel's first contact with Dr. Shepard is privileged or protected when courts routinely require litigants asserting the privilege or protection to provide the date of the disputed communication in a privilege log. *See* Local Rules, Appx. A, Guideline 10.d.; *Victor Stanley*, 250 F.R.D. at 264. For all of these reasons, Defendants' motion is granted. However, further questioning on this topic must be limited to the date of these conversations, and not to the substance of conversations with counsel.

### 4. The Date of Dr. Shepard's last review of the Asserted Patents

Defendants seek to discover the date of Dr. Shepard's last review of the Asserted Patents. 130:15-131:20. The only "argument" asserted by Prowess in its Opposition was that it offered to allow Dr. Shepard to testify if "opposing counsel would agree not to assert a waiver of privilege. Opposing counsel again refused." Pl. Opp'n 27. Defendants' refusal to agree regarding a waiver of the privilege clearly does nothing to establish the basis for Prowess's assertion of the privilege or protection. Accordingly, Defendants' motion to compel is granted.

### e. *In Camera* Review of "Attachment A"

Finally, Prowess objects to this Court's denial of its motion to submit a document for *in camera* review. Prowess refers to this document as "Attachment A." Prowess argues that it provided a factual basis for this Court to review the document because it stated that the "document would aid the Court in determining whether the documents that Defendants seek to compel are privileged." [ECF No. 152, at 1]. Prowess cited Attachment A in its Opposition in connection with its argument that it had engaged attorneys to perform an investigation as of February 8, 2010, and also noted that the document "relates to Prowess' [sic] arguments that as of February 8, 2010, Prowess had engaged attorneys to perform a pre-suit investigation . . . in anticipation of the present litigation." Pl. Reply 24.

Prowess has again failed to establish the basis for this Court to review the document *in camera*. Specifically, Prowess has not provided the author or recipients of this document, the date of its creation, or the basis for asserting that the document itself is privileged or protected. Although the document is apparently only two pages long, this Court cannot conduct an *in camera* review when Prowess has failed to provide the basis for asserting that this document is privileged or protected. *See Victor Stanley*, 250 F.R.D. at 264-66 (explaining the information to be included in a privilege log, and stating that a court should not be required to undertake *in camera* review "unless the parties have first properly asserted privilege/protection."). Prowess's motion for *in camera* review is denied.

## IV. Conclusion

Defendants may re-depose the four witnesses consistent with the parameters discussed herein. The parties are ordered to submit a Joint Status Report to this Court by **May 15, 2013**, indicating whether Prowess still seeks to stay the depositions of these four witnesses pursuant to its Motion to Stay [ECF No. 210], or whether that motion is now moot in whole or in part. The parties will also have until **May 15, 2013** to amend or update their submissions regarding attorneys' fees. After this deadline has passed, the Court will consider whether fees should be awarded, and if so, the appropriate amount of any award.

A separate order is entered herewith.

Dated: April 30, 2013                       _____/s/_____

Stephanie A. Gallagher
United States Magistrate Judge