UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 9, 2013

LETTER TO COUNSEL:

      RE:    *Prowess, Inc. v. RaySearch Laboratories AB, et al*;
              Civil No. WDQ-11-1357

Dear Counsel:

Pending before this Court is a dispute regarding the status of two documents that were produced by Prowess to Defendants. The dispute is presented by way of a joint motion referring to previously filed motions. [ECF No. 234].[1] This Court has considered that joint motion, Defendants' Motion [ECF No. 169], Prowess's Opposition and Cross-Motion [ECF No. 183], Defendants' Reply and Opposition to Prowess's Cross-Motion [ECF No. 192], Prowess's Reply to Defendants' Opposition [ECF No. 205], Defendants' Motion to Strike Prowess's Reply [ECF No. 215], Prowess's Opposition [ECF No. 229], and Defendants' Reply thereto [ECF No. 232]. A hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Defendants' Motion to Strike [ECF No. 215] is DENIED, and the joint motion [ECF No. 234] is DENIED as to Defendants, and GRANTED as to Prowess.

First, Defendants' Motion to Strike alleges that Prowess's Reply [ECF No. 205] constitutes an impermissible sur-reply. However, Prowess's Reply was proper, because Prowess had filed a cross-motion for the return of inadvertently produced documents. Although Prowess's cross-motion and Defendants' motion relate to the same documents, the parties seek different forms of relief in their motions, making Prowess's Reply to its own cross-motion procedurally valid.

Defendants also argue that this Court should not consider arguments raised for the first time in Prowess's Reply. As Defendants note, "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). This "ordinary rule" addresses the concern "that an opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond." *Id.* at 735. "[T]he power to decline consideration of such arguments is discretionary, and courts are not

---

[1] Previously, Defendants filed a Motion for Court Review and Determinations Regarding Permissible Use of Documents. [ECF No. 169]. Defendants asked this Court to rule on whether thirteen specific documents were privileged or protected, and whether they had been inadvertently produced. *See id.* Prowess responded with an Opposition and Cross-Motion for the Return of Inadvertently Produced Documents and Things. [ECF No. 183]. On April 3, 2013, this Court denied both motions because the parties had failed to meet and confer. [ECF No. 226]. The parties met and conferred on April 19, 2013, and were able to reach an agreement about eleven of the thirteen disputed documents.

precluded from considering such issues in appropriate circumstances." *Id.* at 734. This Court finds it appropriate to consider Prowess's arguments for several reasons.

First, Defendants failed to meet and confer with Prowess before filing their motion. Had the parties properly met and conferred, Prowess may not have needed an additional memorandum to fully address Defendants' arguments and the disputed documents. Defendants also failed to present detailed arguments regarding the attorney-client privilege, work product protection, and common interest privilege until their own Reply. Moreover, Prowess's primary argument, that it has a common interest with UMB and Dr. Yu, is not new, and was raised in Prowess's Opposition. Pl. Opp'n & Cross-Mot. 14. Lastly, in their Motion to Strike and Reply, Defendants responded to the substance of Prowess's "new" argument that Dr. Yu was acting as an "agent" for Prowess. Therefore, any concern that Defendants might be prejudiced by their inability to respond to Prowess's new arguments has been alleviated. For all of these reasons, Defendants' Motion to Strike is denied.

The parties' remaining cross-motions address two disputed documents. The first is an infringement and validity analysis composed by Dr. Fong, the Director of Engineering at Prowess, and Dr. Yu, an inventor of the Asserted Patents and an employee of UMB ("the Fong/Yu analysis"). Def. Mot. Ex. 1D. This document was originally sent by Dr. Fong to Dr. Yu and other Prowess employees, and was later revised by Dr. Yu. *See* Def. Mot. Ex. C. Prowess asserts that Dr. Yu provided the Fong/Yu analysis to Royal Craig, its former litigation counsel. Pl. Reply, Exs. 14, 15. Prowess further argues that the Fong/Yu analysis is not discoverable pursuant to the common interest privilege. Pl. Opp'n & Cross-Mot. 14; Pl. Reply 11-12. Defendants argue that Dr. Yu drafted parts of the Fong/Yu analysis, thereby destroying any privilege or protection attached thereto. Defendants also argue that the document was not provided to counsel, and that the underlying facts contained in the document are discoverable in any event. ECF No. 234, at 3; Def. Reply & Opp'n 8-10. While Defendants are correct that underlying facts are discoverable, the Fong/Yu analysis itself is not discoverable pursuant to the common interest privilege.[2]

The common interest privilege is an extension of the attorney-client privilege and work product protection. *In re Grand Jury Subpoenas 89-3 & 89-4*, 902 F.2d 244, 249 (4th Cir. 1990). To be protected under this privilege, communications between parties "must first satisfy the traditional requisites for the attorney-client or work product privilege." *Glynn v. EDO Corp.*, Civil No. JFM-07-01660, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010). After establishing the elements of the attorney-client privilege or work product protection, the proponent must also demonstrate the common interest elements, namely that "(1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of

---

[2] Defendants, upon re-deposition of Dr. Yu or Dr. Fong, may discover the factual basis for Prowess's assertions that Defendants' products infringe on the Asserted Patents, and that the Asserted Patents are valid. *See* ECF No. 237. Defendants simply may not discover precisely what Prowess communicated to its attorneys.

the joint legal effort, and (3) the privilege had not been waived." *Id.* (citing *In re Grand Jury Subpoenas*, 902 F.2d at 248-49).

Prowess has demonstrated that the Fong/Yu analysis is work product protected. The proponent of the work product doctrine bears the burden of proving that the documents or communications at issue were created "in anticipation of litigation," and that they were prepared "by or for another party or its representative." *See* Fed. R. Civ. P. 26(a)(3)(A); *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 231-32 (4th Cir. 2011). Prowess has demonstrated that Dr. Fong and Dr. Yu prepared their analysis for a lawyer in anticipation of litigation. Pl. Reply Exs. 14, 15; ECF No. 154, Ex. 8 ("Fong Dep.") 155:4-11. Prowess hired a lawyer immediately before creating the Fong/Yu analysis. The emails, to which the Fong/Yu analysis was attached, state that the Fong/Yu analysis relates to "the Phillips/RaySearch [sic] violation of our patent and the argument to refute their claim of prior art." Def. Mot. Ex. C. The report itself analyzes the potential infringement of the Asserted Patents and the prior art references asserted by Defendants. Therefore, Prowess has established it created the Fong/Yu analysis in anticipation of patent infringement litigation with Defendants, and that the work product protection applies.[3]

As for the common interest elements, Prowess has demonstrated that it shares an identical legal interest with UMB and its employees. A patentee and potential exclusive licensee have a common legal interest in seeking and maintaining enforceable patents. *See In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996). In this case, UMB and Prowess, the patentee and the exclusive licensee, share a legal interest in maintaining the viability of the Asserted Patents.[4]

Prowess has also established that the Fong/Yu analysis was created by Prowess and UMB, through Dr. Yu, in furtherance of their joint effort to pursue an infringement action against Defendants. In their Master Agreement, UMB and Prowess agreed that UMB would "cooperate fully" with Prowess in any infringement action brought by Prowess. ECF No. 199, Ex. 3, Articles 10.05, 10.02. In February 2010, Prowess began to seriously consider filing a patent infringement action against Defendants. Prowess and UMB, through Dr. Fong and Dr. Yu,[5] then created the Fong/Yu analysis, examining Defendants' potential infringement and prior

---

[3] This document may also be attorney-client privileged, because it was communicated to counsel for Prowess. Pl. Reply, Ex. 14.

[4] Defendants have asserted that the patents are invalid, and that Dr. Yu and the other inventors withheld material references when prosecuting the Asserted Patents. Therefore, Dr. Yu may also share a common interest with Prowess, in his personal capacity, in proving that the Asserted Patents are valid and that Defendants' prior art assertions are improper.

[5] Dr. Yu worked at UMB when the Fong/Yu analysis was created, and still works at UMB. Defendants and Prowess present arguments relating to Prowess's declaration that Dr. Yu was acting as a "limited agent" for Prowess. These arguments are of little consequence here, because Prowess has consistently argued that Dr. Yu is a UMB employee, and that it viewed communications between Dr. Yu and Prowess

art claims. The Fong/Yu analysis was then provided to counsel for Prowess to facilitate his understanding of the complicated technology and to assist in preparing his legal analysis. Pl. Reply Ex. 14. Therefore, the Fong/Yu analysis was created by Prowess and UMB in furtherance of their joint legal endeavor to prove infringement and validity of the Asserted Patents. Lastly, as explained in greater detail below, Prowess has not waived the privilege or protection by inadvertently producing this document to Defendants. Accordingly, the Fong/Yu analysis is protected under the work product doctrine and common interest privilege.

The second disputed document is an infringement analysis provided to Prowess by its former litigation counsel ("the Craig analysis"). Def. Mot. Ex. 1E. Defendants do not dispute the existence of the underlying attorney-client privilege or work product protection, but argue that any such privilege or protection was waived when the Craig analysis was sent to Dr. Yu. Def. Reply & Opp'n 7. As explained above, however, UMB and Dr. Yu share a common interest with Prowess in this litigation. *See Regents*, 101 F.3d at 1390. Moreover, the document contains an attorney's analysis, opinions, and conclusions regarding Defendants' infringement of the Asserted Patents, and was therefore clearly made in furtherance of Prowess and UMB's joint legal effort to establish infringement and validity of the Asserted Patents. The Craig analysis, therefore, is also protected under the common interest privilege.

Defendants argue that Prowess has waived any applicable privilege or protection by producing the documents to Defendants. The waiver issue is governed by Fed. R. Evid. 502(b). If a party produces privileged or protected documents during discovery, it will not be considered to have waived the privilege or protection if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b).

This Court is persuaded that Prowess's production of the documents was inadvertent. Instead of producing certain documents within a sub-folder as intended, Prowess mistakenly selected the entire sub-folder for production. *See* Pl. Opp'n & Cross-Mot., App'x A. Moreover, upon learning of the production, Prowess immediately contacted Defendants and informed them that the production was inadvertent. *Id.* at Ex. 4.

Prowess also took reasonable steps to prevent disclosure. Prowess hired contract attorneys to review for privilege, trained the contract attorneys and instituted guidelines for their review, and had supervising attorneys review the work of the contract attorneys to check for errors. *Id.* at 19, App'x A. In addition, Prowess only inadvertently produced 16 documents out of approximately 60,000 documents and 900,000 pages.

Lastly, Prowess took reasonable steps to rectify its production error. Prowess first learned that it had produced the documents on January 14, 2013, when Defendants filed their motion. Prowess contacted Defendants the next day, and informed Defendants that the

---

as communications between Prowess and UMB. *See, e.g.*, Fong Dep. 201:8-23; ECF No. 183, at 14; ECF No. 199, at 21.

documents were privileged and inadvertently produced. *Id.* at Ex. 4. Prowess then investigated the oversight, and again reviewed the documents produced for privileged material. *Id.* at 20. Defendants argue that Prowess failed to take reasonable steps to rectify the error because Prowess did not attempt to claw back the documents until after Defendants filed their motion. However, as the advisory committee notes make clear, Rule 502(b) "does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake." Prowess took reasonable steps to rectify its error immediately upon becoming aware of the mistake, and has not, therefore, waived the privilege or protection. Defendants must return the two disputed documents to Prowess.

       A separate order is entered herewith.

                                           Sincerely yours,

                                                /s/

                                          Stephanie A. Gallagher
                                          United States Magistrate Judge